F. R. LUBBOCK v. MOSES BINNS ET AL.

Decided February 16, 1899.

**1.  Patent—Wrong Land Included—Correction Refused.**

A patent will not, after those claiming thereunder have acquiesced in it for over fifty years, be reformed by correcting a departure in its description from the survey made under the certificate, due to a mistake in the Land Office map purporting to show the location of the survey, and which resulted in locating the land too far north, where the land next south which should have been included has been long since located and patented and rights have been acquired therein in reliance upon the situation as disclosed by the former patent and the map, it appearing that there is no other public domain upon which the later certificate may be relocated, and it not appearing that the former patentee has disclaimed title to the land gained on the north, or that such land was originally less valuable than that lost on the south.

**2.  Same—Public Lands.**

A patentee from the State acquires indefeasable title to public lands not already located included within his patent, although not embraced in the survey upon which the patent is based.

**3.  Same—Conflicting Locations—Rights of Third Persons.**

A patent from the State confers a valid title upon the patentee as to land covered thereby which had already been located under another certificate, except as against persons claiming under such certificate and a patent based thereon.

4.  Land Certificate—Probate Sale.

The land itself and not the certificate under which it was located will be deemed to have been the subject of a probate sale where the order of sale, though not explicit on that point, and the deed, by their recitals and directions, indicate that the land and not the certificate was sold, although if only the report of the appraisers and the report of sale were looked to it might be inferred that the certificate and not the land was sold.

APPEAL from Harris.   Tried below before Hon. JOHN G. TOD.

*E. P. Hamblen,* for appellant.

*W. P. Hamblen* and *Campbell & Meyer,* for appellees.

PLEASANTS, ASSOCIATE JUSTICE.—Appellant, F. R. Lubbock, sued appellees to recover 640 acres of land patented to C. V. Uglow; and T. U. Lubbock intervened, claiming the land sued for as the sole heir of the patentee.   The defendants, besides demurrers to the petition of the plaintiff and that of the intervener, pleaded in reconvention, claiming to be the rightful owners of 530 acres of the land covered by the Uglow patent.   The defendant Herndon, who owned the land patented to John Bailey, averred that the patent to this land does not correctly give the field notes as originally fixed by the surveyor; that said field notes cover about 265 acres of the land embraced in the Uglow patent; and that the field notes were changed without authority, and by mistake, by the Commissioner of the Land Office, and other field notes substituted for the original and placed in the patent; and he prayed for correction of this error, for the recovery of the land, and for the cancellation of the Uglow patent to the extent that it conflicted with the Bailey as originally surveyed.   The defendants, Coane and others, who claimed the land covered by the Batchelder patent, made like defense and prayed as defendant Herndon, making similar allegations as to the original survey for the patentee, and the unauthorized change of the original field notes, and the insertion of other than the original, in the patent to Batchelder.   The intervener asserted title to the Uglow as against both plaintiff and defendants, denying that the plaintiff's vendor ever acquired title to the land through sale made, as contended by plaintiff, by the administrator of the estate of C. V. Uglow.

Upon trial of the cause by the judge of the court, without a jury, on May 23, 1898, judgment was rendered for the defendants by which they were decreed all of the land embraced in the Uglow patent, save 90 acres, and this was decreed to the intervener, T. U. Lubbock; and from this judgment both the plaintiff and the intervener appealed to this court.

The case as presented to us, as between the plaintiff and the defendants, is briefly this: The Bailey, Koppman, Batchelder, and Jeffries constitute a block of surveys made in 1838 and 1839 by H. Trott, the then surveyor of Harris County.   The Uglow survey was made by Tipton Walker on the 9th day of July, 1845.   It calls for the Bailey and Batch-

elder as its northern boundary. The attached sketch taken from a map of Harris County, and being the only map of that county recognized and used in either the General Land Office or the county of Harris from 1840 to 1884, will show the relative position of the Uglow and the Bailey and Batchelder and Koppman to each other, and to the adjoining surveys at the time of the survey of the Uglow:

Sketch from Harris District Map, dated 1847, showing the positions
of Jas. Bailey and C. V. Uglow Surveys as they originally
appeared on the Map
GEN'L LAND OFFICE, June 15, 1892

The evidence is uncontradicted that the maps in the General Land Office from 1840 to 1884 all place the Bailey west of and adjoining the Koppman and Jeffries surveys, and the Uglow survey south of and adjoining the Bailey and Batchelder surveys, and west of and adjoining the M. B. Walters or B. Connor survey.

The evidence is also uncontradicted that at the time of the survey of the James Bailey and the Batchelder surveys by Trott, in 1838 or 1839, the Koppman had not been surveyed, and was not surveyed for five or six months after these surveys were made; and that the Bailey survey began at the northwest corner of the Jeffries, which is now the southwest corner of the Koppman, and ran south for the proper distance along the west boundaries of the Jeffries and the Connor, and thence west, and thence north, and thence east to the beginning; and that the Batchelder then, as now, ran from the northwest corner of the Bailey west for the proper distance, and thence south parallel with the west line of the Bailey to its southwest corner, and thence by a right line to the

southwest corner of the Bailey; and that in 1846, without any evidence of another survey of either the Bailey or the Batchelder having been made, the chief draughtsman of the Land Office changed the beginning corner of the Bailey from the northwest corner of the Jeffries to the northwest corner of the Koppman, and by this change of the beginning of the Bailey, both it and the Batchelder were pushed north; and in accordance with this change in the original position of their surveys patents were issued to Bailey and to Batchelder respectively; and their patents have remained as they were issued, without effort, so far as the record of this case discloses, on the part of either of the patentees, or any one claiming under them, to compel the Commissioner of the General Land Office to issue patents for the land actually surveyed for the patentees, or otherwise to have the error of which they complain corrected, until the institution of this suit,—a period of fifty years.   There is no evidence of notice to the locator of the Uglow, save that which perhaps may be imputed to him from the records of the surveyor's office, and which as we have seen is in conflict with the map of the county then existing, that the survey he caused to be made would conflict with either the Bailey or the Batchelder.

It is not questioned that it was the privilege of the patentees of these two surveys to have had the lands covered by their surveys patented to them, and they might have compelled the Commissioner, by the aid of the judiciary, to have corrected the patents issued to them so as to embrace the lands to which by their locations and surveys they had acquired an inchoate title.   Nor can it be questioned that a court of equity may give relief to a patentee in a case such as this, against a junior patentee or purchasers under him, when the relief can be afforded in consonance with the principles and maxims upon which those courts administer justice between man and man.   And the question for our decision is, is this a case in which a court of equity should render to the complainants the relief prayed for? and this question, we think, should be answered in the negative.   It is proper to say here that one of the defenses pleaded by the plaintiff is laches on the part of the patentees. That the owner of the Uglow certificate acquired by his location, survey, and patent a complete and valid title to the land covered by the patent, and voidable only at the suit of the owners of the Bailey and Batchelder certificates, and those claiming under them, notwithstanding the fact that his location was upon titled lands, is, we think, indisputable.   Vide Gullitt v. O'Connor, 54 Texas, 408.   And we think it is equally indisputable that the patentees under the Bailey and Batchelder certificates, notwithstanding the fact that the lands covered by their patents are not the same as those embraced in the surveys made under their certificates, acquired and still have indefeasible titles to the lands patented to them.   Vide 6 Texas, 511; 16 Texas, 440; 54 Texas, 416; 59 Texas, 430; 30 Texas, 273; 46 Texas, 292; 66 Texas, 371; 26 Texas, 376; 71 Texas, 141.

There is no complaint that the appellees have not the quantity of

lands for which the certificates to Bailey and Batchelder called; nor is there anything in the evidence tending to show that the land covered by the Uglow patent is of greater value than that covered by the patents issued to the owners of the Bailey and the Batchelder certificates.

The appellees, as we understand their pleadings, have not disclaimed title to any portion of the lands covered by the patents to Bailey and Batchelder, nor does the decree divest them of title to any portion of said lands, but all parties by agreement went to trial upon the issue of boundary between the Uglow and the Bailey and Batchelder patents. For over fifty years those claiming under the Bailey and Batchelder patents have acquiesced in the correctness and validity of those patents, and in the meantime rights have been acquired by third parties, under the Uglow patent, without notice of any claim of right to any portion of the land covered by that patent, asserted by one claiming under surveys made under and by virtue of the Bailey or Batchelder certificates. The appellant has been owner, by purchase, of the Uglow land since 1855,—for over forty years before the institution of this suit,—and now there is no public domain upon which the Uglow certificate could be located; and by the law as it now is the certificate could not be relocated if there were unappropriated land upon which to place it; but had those holding under the Bailey and Batchelder patents not delayed so long to have the errors in their patents corrected, those errors might have been corrected, doubtless without serious injury or loss to the holders under the Uglow patent.

Under all the facts disclosed by the record before us, the security of land titles, and justice and right as well, it seems to us, would forbid a court of equity to grant the prayers of the appellees.

The appellant, F. R. Lubbock, deraigns his title to the land in controversy under a sale made by the order of the probate court of Harris County in the administration of the estate of C. V. Uglow, deceased. The intervener insists that under said order of said court the certificate by virtue of which the land in question was patented, and not the land, was sold. At the time of the sale the land had been patented; and if it be true that the certificate, and not the land, was the subject of the probate sale, the purchaser acquired no title to the land. Vide East v. Dugan, 79 Texas.

In November, 1844, the probate court of Harris County, in the matter of the estate of C. V. Uglow and Theresa Uglow, deceased, made the following order:

"It appearing to the court that all the personal property belonging to these estates has been set off for the support of the minor child of the deceased, in terms of the law, as also the residence of the deceased, and by the petition of the administrator, C. Herman Jaeger, for a sale, that there are debts against the succession which ought immediately to be paid; it is ordered, considered, and adjudged by the court, that the administrator, C. H. Jaeger, proceed to sell all the property belonging to this estate for cash, with appraisement, first giving twenty days no-

tice by posting written advertisements in three public places within this county, one of which must be at the courthouse door, of the time, place, and terms of sale, as also the property to be sold, selling on the first Tuesday of the month of January, 1845, and a true return of such sale to make within twenty days thereafter."

And on the 5th day of August, 1845, the following appraisement of property of said estate was made by order of said court, and reported to the court by the appraisers, to wit:

"One certificate, 640 acres, No. 110, issued in Harris County, C.
   V. Uglow ...........................................$20 00
"One certificate, 640 acres, No. 109, issued in Harris County, to
   T. Uglow, administratrix to S. D. Smith ..................  20 00
"One certificate, 960 acres, No. 1470, patented to S. Putman ....  20 00

"Subscribed and sworn to before me August 5th, 1845.
                              "A. P. THOMAS,
                         "Chief Justice Harris County.
                              "JNO. FITZGERALD,
                              "JOHN LEVI,
                              "A. S. THURSDON."

And on the same day the administrator made report of sales as follows:

"One certificate, 640 acres, No. 110, issued in Harris County, to
   C. V. Uglow, sold for ...............................$13 33⅓
"One certificate, 640 acres, no 109, issued in Harris County, to
   T. V. Uglow, administratrix of S. D. Smith, sold for........  13 33⅓
"One certificate, 960 acres, No. 1470, patented to D. Putnam, sold
   for. ......................... ...........................  26 66⅔
   "The foregoing is a correct account of the sales made by me.
                    (Signed)   "C. HERMAN JAEGER,
                                         "Administrator.
"Sworn to and subscribed August 25th, 1845.
                                      . "E. J. BAKER, Clerk."

This account of sale was approved by the court and ordered entered upon the records, and the amount of money realized from the sales charged to the administration. And the administrator duly executed to the purchaser, C. W. Adams, a deed of conveyance to the land covered by the patent offered in evidence by the appellant, and in which deed occurs the following recitals:

"By authority of the orders of the probate court of said county to me directed, I did, after publication of notice of sale and appraisement, offer at the courthouse door of Harris County, on the 5th day of August, 1845, the following parcels of land in Harris County, namely: That parcel containing 640 acres, surveyed by virtue of the headright certificate of

the said C. V. Uglow, deceased, and granted to the said Uglow, his heirs and assigns by the President of said Republic, by patent letters dated July 24, 1845, and fully described in said letters patent No. 170; volume I."

When the certificate was located, whether before or after the order of sale was made, does not appear from the evidence before us. The survey was made on the 9th of July, 1845, and the land was patented on the 29th of the same month. From the foregoing extracts from the minutes of the probate court, and from the deed of the administrator to the purchaser at the sale, we are of the opinion that the land, and not the certificate by virtue of which the patent to the land was issued, was the subject of the sale ordered by the court, and we think the lower court erred in holding otherwise, and in not rendering judgment for the appellant as against the intervener. In the case of East v. Dugan, supra, the order of the court was to sell the certificate. In the case here, the judgment of the court, after reciting that all of the personal property of the estate, as well as the residence of the decedents, had been set apart for the support of their minor child, and that there existed debts against the succession which should be paid immediately, directs the administrator to sell all of the property belonging to the estate, and requires that the sale be advertised for twenty days, and that one of the places at which the advertisement should be posted, be at the courthouse door, and that the sale be made on the first Tuesday of the month of January. These directions were in accordance with the requirements of the statute regulating the sale of realty and not personalty. Personal property was advertised for only ten days, and was not required to be sold on the first Tuesday in the month. If we look only to the report of the appraisers, and the report of the sale by the administrator, we might well conclude that the certificate and not the land was sold; but the recitals and the directions in the order of sale and the deed of the administrator to the purchaser are, we think, entitled to much more weight than the meager reports of the appraisement of the property ordered sold, and of its sale. The order of sale, as were such orders generally at that day, was not as definite as it should have been, but we can construe it to be none other than as one for the sale of real property.

The judgment of the lower court, for the errors indicated, is reversed, and this court proceeding to render such judgment as should have been rendered by the trial court, adjudges and orders that the appellees take nothing under their pleas of reconvention, and that the intervener take nothing by his suit, and that the appellant recover, against all the appellees and the intervener, the land described in the patent issued by the Republic of Texas to C. V. Uglow on July 24, 1845.

DISSENTING OPINION.

WILLIAMS, ASSOCIATE JUSTICE.—The writer disagrees with the majority of the court in the conclusion reached upon the facts affecting the

issue of boundary between appellant, F. R. Lubbock, and the appellees claiming the Bailey and Batchelder surveys. The beginning corner of the Bailey survey, in my opinion, should be held to be the northwest corner of the Jeffries or Belden survey, as called for in the field notes of the original survey of the Bailey, which would locate that survey as appellees claim it. The original field notes of the Bailey began as follows: "Situated on head waters of Sims' Bayou west of and adjoining a survey made John Belden, assee. of Jeffries. Beginning at a stake & mound in the prairie *said Belden's* N. W. corner. Thence south 3600 vs. crossing Sims' Bayou at 1460 vs. & passing his S. W. corner at 1900 varas to a stake & mound in the prairie," etc. In the Land Office the words "said Belden's" were erased by a line drawn through them and the name P. Koppman was interlined above them, but no other change in the field notes was made. Upon the field notes thus altered the patent was issued. In my opinion this alteration was not intended to and did not change the location of the Bailey survey. The insertion of the name of Koppman is explained by the fact that the maps represented that survey to be immediately east of the Bailey and to be intersected, as was the latter survey, by Sims' Bayou, the only natural land mark in that vicinity. The officials in the Land Office, being misled by the maps, assumed that the call for the Belden corner was a mistake, when in truth it was not, and in making the change only intended to call for the corner of the survey which they supposed to be situated where the Belden was called for. Their mistake was as to the location of the Koppman and not that of the Bailey. This is rendered sufficiently evident by the fact that the calls for the bayou were left unchanged, upon the assumption that it intersected both the Bailey and the Koppman, when in fact it does not touch the Koppman, but does run through the Bailey and the Belden or Jeffries.

I do not contend that the calls for the bayou in the field notes are locative. The fact that they are does not necessitate their utter rejection. They serve, with the maps, to explain the reason for the alteration of the field notes, and to show that the officials in the Land Office did not intend to do what they had no authority to do and change the location of the Bailey as surveyed on the ground. My opinion is, that the evidence referred to may be considered in construing the patent as it is, not for the purpose of altering or correcting it, but to reconcile its calls and determine their effect when considered together. When thus considered the evidence shows, to my mind, that the name Koppman should be rejected and that of Belden or Jeffries read in its place, as it was in the original notes, and that the survey should commence at the corner of the latter survey and run with the calls for course and distance. In this way the calls to cross the bayou are satisfied, though the distances given are incorrect. The calls for the bayou being incidental, the distances given for it should yield to the lengths given to the lines of the survey.

*Reversed and rendered.*

Writ of error refused.