**KUYKENDALL et al. v. SPILLER.*** '
(No. 11820.)

Court of Civil Appeals of Texas. Fort Worth.
June 25, 1927.

Rehearing Denied Sept. 24, 1927.

l. **Public lands** ☞175(5)—**Purchaser placing application to purchase state lands with surveyor and paying price acquired equitable title, though field notes returned were incorrect** (Acts 1881, c. 105; Rev. St. 1925, arts. 5409, 5410; Rev. St. 1895, arts. 4132, 4145, 4154; Rev. St. 1879, arts. 3894–3896).

Purchaser applying to purchase state lands set apart for school purposes and placing application with surveyor to be surveyed and paying price therefor acquired equitable title to lands even though field notes as returned by the 'surveyor were incorrect, and under Act ap-

proved April 6, 1881 (Acts 1881, c. 105), Rev. St. 1925, arts. 5409, 5410, Rev. St. 1895, arts. 4132, 4145, 4154, and Rev. St. 1879, arts. 3894–3896, the equitable title ripened into legal title when land. was correctly surveyed and patent issued in accordance with corrected field notes.

2. **Mines and minerals** ☞6—**Purchaser of state lands held not estopped to assert title against applicant for mineral permit put on notice of misdescription in field notes.**

Where purchaser of state school lands acquired equitable title covered by his application even though field notes of different surveys made thereafter were incorrect, and his equitable title later ripened into legal title when land was correctly surveyed, he was not estopped to assert title as against applicant for exclusive permit to prospect land for minerals, where applicant was put on notice that field notes carried into purchaser's patent did not describe land covered by purchaser's application, and that land commissioner was authorized to have land resurveyed and issue another patent in lieu of original.

3. **Estoppel** ☞58—**Estoppel operates only to protect right already acquired, which invoking party would lose unless other party is prevented from asserting right.**

Estoppel cannot be invoked as instrumentality of gain or profit, and operates only to protect person invoking it in right already acquired, and which he would lose unless party against whom it is urged is prevented from asserting conflicting right which would be superior to that of person invoking estoppel.

4. **Estoppel** ☞22(2)—**If estoppel invoked is by deed, burden is on one invoking it to show he was misled by reliance on recitals.**

If estoppel invoked is by deed of adverse party, burden is on one invoking it to show he was misled to his injury because of reliance on recitals in deed, and that he had no notice of facts contrary to those recited.

5. **Estoppel** ☞15—**Deed containing self-contradictory description will not support estoppel.**

Instrument under which estoppel is claimed must be clear and unambiguous, and if description of property contained therein is self-contradictory, deed will not support estoppel.

6. **Estoppel** ☞22(2)—**Generally, recital inserted in deed through mistake will not operate as estoppel so as to exclude truth.**

Generally, a recital inserted in a deed through mistake of parties will not be permitted to operate as estoppel so as to exclude truth.

7. **Mines and minerals** ☞6—**Applicant held not to have established right to oil and gas permit, where land was unsurveyed area within meaning of statutes** (Vernon's Sayles' Ann. Civ. St. 1914, arts. 5396, 5397, 5399; Rev. St. 1925, arts. 5339, 5340, 5348).

Applicant for permit for exclusive right to prospect school land for oil and gas held not to have established right thereto, where land was in an unsurveyed area within meaning of Vernon's Sayles' Ann. Civ. St. 1914, arts. 5396,

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error refused November 30, 1927.

(299 S.W.)

5397, 5399, and Rev. St. 1925, arts. 5339, 5340, 5348, and unsurveyed area of section had never been segregated from the remainder of the section nor set apart as excess therein.

**8. Mines and minerals ⬡⊃6—Application for mineral permit on unsurveyed lands must be filed with county surveyor (Rev. St. 1925, art. 5340).**

Under Rev. St. 1925, art. 5340, application for permit to prospect land for oil and gas on unsurveyed school lands must be filed with the county surveyor.

Appeal from District Court, Jack County; F. O. McKinsey, Judge.

Suit by Kyle Spiller against A. B. Kuykendall and others. From a judgment for plaintiff, defendants appeal. Reversed, and judgment rendered for defendants.

Marshall & King, of Graham, and E. Cartledge, of Austin, for appellants.

Goree, Odell & Allen and Hampden Spiller, all of Fort Worth, for appellee.

DUNKLIN, J. This suit involves the title to 160 acres of land out of the south end of a survey of 640 acres of land situated in Jack county, Tex., known as section 2 in block 1, made by virtue of certificate No. 1/261, issued by the commissioner of the general land office to Beaty, Seale & Forwood, on January 8, 1875. The following is a plat of said survey and other surveys adjoining it:

The record shows that the C. L. Bevers survey, lying south of said section 2, was a junior survey to said section.

The suit was instituted by Kyle Spiller against A. B. Kuykendall and the Buttram Petroleum Corporation for a decree establishing his alleged right as against the defendants to have issued to him by the land commissioner a permit conferring upon him the exclusive right to prospect for and develop petroleum and natural gas on the 160 acres above noted, under and by virtue of the provisions of subdivision 1, c. 4, tit. 86, Rev. St. 1925.

By act of the Legislature, the land was set apart for the benefit of public school funds, and thereafter, by act approved April 6, 1881 (Acts 1881, c. 105), provision was made for its sale. Under and by virtue of that act, Benjamin Stephens, on January 12, 1883, filed with the surveyor of the Jack land district his application to purchase a portion of the survey described as follows:

"160 acres of section No. 2 Block No. ——— in Jack County, Texas, about 18 miles S W from Jacksboro, surveyed by virtue of B S & F certificate No. 1/261.

"Beginning at S W Corner of said section 2.

"Thence E 69 vs [evidently intended 690 vrs.]

"Thence N. 1309 vs

"Thence " 690 vs

"Thence S 1309 vs to the place of beginning and containing 160 acres of land."

On January 17, 1883, he paid to the state treasurer the amount required as the initial payment for said purchase, and the treasurer issued to him a certificate therefor in accordance with the laws in such cases made and provided.

The first survey of the 160 acres made for Benj. Stevens, under his application for purchase, was made by W. C. Roberts, surveyor of Jack county, on March 3, 1883, and his field notes were filed in the land office on March 22, 1883; but, as appears in the files of the land office, the same were marked canceled. On May 25, 1886, Benj. Stevens and wife sold and conveyed to B. W. Clendenen a tract described as the S ¼ of section 2, first above mentioned.

On May 11, 1896, W. B. Clendenen made application to purchase from the state the N ½ of the S ½ of the section above described, and the same was awarded to him November 11, 1896. Two other surveys were made of the tract which Benj. Stevens made application to purchase, one by George Spiller, surveyor of Jack county, on March 23, 1904, and the field notes of that survey, with a plat of the land accompanying it, were filed in the land office on May 4, 1904. The field notes so returned and filed were certified as "corrected field notes of a survey 160 acres of land made B. W. Clendenen, assignee of Ben Stevens," and described the land as follows:

"Situated in Jack County on the waters of Rock Creek about 15½ miles S 45 W of Jacks-

boro, known as the S ¼ of B S & F survey No. 2 Scrip 1/261.

"Beginning 160 vs. North of the S W cor of survey 2, which is in east line of S. P. R. R. Co. No. 8 Scrip 16/123 Pile of Stone two P O s br respectively N 42 E 17 vrs and S 70 E 17 vrs.

"Thence north 888 vrs cor. two P Os br respectively S 45 E 6 vs and S 23 W 7 vrs.

"Thence east 1164 vrs pile stone in the west line of B S & F survey 1, scrip 1/261.

"Thence south 74 vrs S W cor of same, thence west 160 vrs to N W cor, J. F. Torry survey No. 2 Scrip 15.

"Thence south with west line same 814 vrs. pile stone two P Os br respectively N 1 W 7 vrs, and N 73 E 6 vrs.

"Thence west 1004 vrs to the place of beginning."

A patent was issued to B. W. Clendenen as assignee of Benj. Stevens on May 7, 1904, with the same description of the land as shown in the field notes of George Spiller, copied above. The plat accompanying the field notes shows the 160 acres so surveyed to be situated 160 varas north of the south boundary line of said section 2, and indicated on the plat above shown by the area A B C D.

On May 16 and 17, 1926, Sylvan Sanders, a licensed land surveyor, also surveyed the south 160 acres of said section 2 and filed field notes of his survey with the land commissioner on May 29, 1926. The field notes of the survey covered the 160 acres in controversy and made the north boundary of the Bevers tract the south boundary of the 160 acres, as well as the south boundary of section 2.

After the return of those field notes the land commissioner canceled the patent theretofore issued to W. B. Clendenen as assignee of Benj. Stevens and issued to him another patent in lieu thereof, describing the land as described in the field notes so made by Sylvan Sanders. That patent was dated June 1, 1926. At the same time Sylvan Sanders surveyed the south 160 acres of section 2 he also surveyed the north ½ of the south ½ of the same section and returned field notes of that survey to the land commissioner. On September 10, 1926, a patent was issued to B. W. Clendenen to the north ½ of the south ½ of said section described in accordance with the field notes of Sylvan Sanders. That patent seems to have been likewise issued as a substitute for a former patent. Prior to the issuance of those patents A. B. Kuykendall had purchased from Clendenen the south ¼ of the section described as the same was described in the original patent issued in 1904 to Clendenen as assignee of Benj. Stevens. Kuykendall had also purchased from Clendenen the north ½ of the south ½ of the same section and had also become the owner by purchase of the balance of the same section, and also of the C. L. Bevers survey lying south of that section; and the resurveys of those two tracts and also of the entire sec-

tion by Sylvan Sanders, as hereinafter noted, was made at his instance. At that time Kuykendall also filed with the land commissioner affidavits supporting his claim that the former surveys were incorrect and that those made by Sanders should be adopted by the land commissioner, and that the two corrected patents should be issued in accordance therewith. The affidavits so furnished by him included further proof of ownership in him by regular transfer from Benj. Stevens and B. W. Clendenen.

There were also several surveys made of the entire section 2, the first being made March 22, 1875, by W. A. Benson, surveyor of Jack district, and his field notes were filed May 19, 1875. The field notes of that survey are as follows:

"Beginning at the S W cor. of survey No. 1 by virtue of same certificate

"Thence N 2500 vrs to stake

"Thence N 1010 vrs to stake

"Thence S 4291 vrs to stake

"Thence E 606 vrs to stake

"Thence N 1791 vrs to stake

"Thence E 404 vrs to beginning."

What are termed as corrected field notes of the same survey were filed in the general land office by the same surveyor on March 24, 1876, the survey being certified as having been made on March 8, 1876; but the files in the land office show that the field notes of that survey were marked canceled.

Another set of field notes certified to by W. C. Roberts of a survey certified to by him as having been made on March 3, 1883, were filed in the general land office on March 22, 1885. The field notes so filed bear indorsements indicating that they were not approved because the lines called for did not close; the north calls being in excess of the south calls by 59 varas.

The following letter, written by the land commissioner to George Spiller, surveyor of Jack county, appears in the files of the general land office:

"April 2, 1904.

"Geo. Spiller Esq., Jacksboro, Texas—Dear Sir: Replying to yours of the 20th ult., inclosing corrected field notes of the whole of survey No. 2 certificate 1/261, B. S. & F. in Jack county: you are advised that said corrected field notes, together with corrected field notes for Benj. Stevens, covering the S. ½ of said survey, are herewith returned for further corrections, for the following reasons. Chapter 90, section 1, of the Act of 1889, gives to the school surveys all of the land that is in any way embraced in calls of original field notes. In this instance, you will observe that the original field notes calls the west boundary line of that survey 'south 4463 varas; thence east 690 varas to a mound in west line of J. F. Torry & Co. 320 acres survey; thence north 2050 vrs. to N. W. corner of state survey No. 2 of 320 acres, made for said Torry & Co.' 70; which leads this office to conclude that said No. 2 here under consideration is entitled to all the land embraced

in original field notes; even though it may be excessive. You will govern yourself accordingly, in making that correction.

"Correct the whole survey, based on the above instructions, and then make the subdivision surveys conform to correct position of the whole."

The field notes of a survey by Spiller, evidently in compliance with the instructions contained in the foregoing letter, were filed by him in the land office on April 28, 1904, and bore the indorsement: "Correct on map of Jack county, May 4, 1904. Hedrick." But those field notes were further indorsed, "Canceled." According to those field notes the survey contained 801 acres of land.

There was also filed in the land office a letter from Sylvan Sanders, addressed to the land commissioner, containing statements to the effect that he had surveyed all of sections 1 and 2 according to their field notes; that he had located surveys 7 and 8 of the Southern Pacific Railroad Company, lying west of section 2; also the west line of section, 1, the B. S. & F. survey, and sections 1 and 2 of the J. F. Torry & Co. survey; and that the south boundary of section 2, as he located it, conforms to the field note calls in the patent of C. L. Bevers survey. He also stated that an old-fashioned fence line had followed that boundary line: He also stated that in running the east boundary line of the B. S. & F. survey he followed Capt. Spiller's corners and that the corners that had been theretofore established by Capt. Spiller for the south line of section 2 also correspond with the calls in the patent of C. L. Bevers. His testimony on the witness stand was substantially to the same effect. He further testified that he found an excess of 117 acres in section 2. In this connection it is to be noted that the field notes of George Spiller of section 2 made in 1904, mentioned above, gave an excess in the same survey of 161 acres.

No proof was offered to show when the notations of "canceled," indorsed on different field notes, as noted above, were actually made. There was proof tending strongly to show that Benj. Stevens had claimed title and possession down to the north boundary of the C. L. Bevers survey, and that his south boundary fence was placed on that line; although there was further proof to the effect that his house was built within the boundary line of the tract, as shown in his original patent.

The proof showed that the cancellation by the land commissioner of the original patent to Benj. Stevens to the 160 acres therein described and the issuance of another patent to take its place was made because the commissioner was convinced that the land which Benj. Stevens made application to purchase was erroneously described in said original patent, and that the two subsequent patents were issued in order to correct that error.

Authority to cancel a patent whenever the land is found to be erroneously described and to issue another to take its place is conferred upon the land commissioner by articles 5409 and 5410, Revised Statutes of 1925.

It thus appears that as between Benj. Stevens and those claiming title in privity with him on the one side and the state of Texas on the other side, the defendant Kuykendall is vested with a fee-simple title to the land in controversy, in accordance with the corrected patent issued to B. W. Clendenen as the assignee of Benj. Stevens.

The question to be determined then is whether or not appellee Kyle Spiller has acquired the right to the issuance by the land commissioner of a permit to prospect for and develop oil and gas in the land in controversy, superior to the title acquired by the appellant Kuykendall. That question was solved by the trial court in Spiller's favor, and judgment was rendered accordingly. From that judgment this appeal is prosecuted by Kuykendall and the Buttram Petroleum Company, who holds an oil and gas lease from Kuykendall. Spiller's suit is based upon two applications for the right to prospect for and develop petroleum and natural gas according to the statutes in such cases made and provided. The first application was made to the county surveyor of Jack county on April 5, 1926, and described the land upon which the permit was given as follows:

"All of the unsold portion of B. S. & F. Sec. 2 Cert. 1/261, lying south of 160 acres patented to B. W. Clendenen, assignee of Ben Stevens, by patent No. 272, vol. 28, and north of the south 80 acres of said section, containing about 81 acres of land."

On July 6, 1926, the land was surveyed by George Spiller, surveyor of Jack county, and the field notes conform to the description contained in that application. The second application was made by Spiller to the county clerk of Jack county on March 12, 1926. The land described in that application was as follows: "South part section 2 certificate 1/261, grantee B. S. & F. 80 acres." The record does not contain any evidence that the land therein described was surveyed and field notes thereof made by the county surveyor.

[1] It thus appears that those applications were filed by Spiller prior to the cancellation of the original patent issued to Benj. Stevens and the issuance of another patent in lieu thereof covering the land in controversy. In his pleadings Spiller alleged that Benj. Stevens and those claiming title under him, including the appellants, were estopped to assert title as against him. The basis of the estoppel consisted of allegations to the following effect: That Benj. Stevens had the surveyor of Jack county to survey and return to the land office field notes of the land covered by his application for purchase, and

later accepted and received the original patent issued in accordance with those field notes; that the land so surveyed and patented lies north of the land in controversy; that after having said land surveyed, Stevens went into possession of the same and used and occupied it until he sold it to B. W. Clendenen; that Clendenen then went into possession and thereafter accepted the original patent thereto; that said patent was issued upon field notes filed by Clendenen in the land office; and that thereafter neither Clendenen nor his heirs nor assignees took any steps to have the patent canceled and corrected by the land commissioner until after Spiller's applications above mentioned had been filed. It was further alleged that Spiller filed his applications for permits to prospect for oil and gas relying upon the acts of Stevens, Clendenen, and Kuykendall, above mentioned, and believing that the land covered by his applications was unappropriated public domain, and that he was thereby caused to incur expenses of time and money to procure such permit; it was further alleged that the cancellation of the original patent and the issuance of the corrected patent to the land in controversy was done at the instance of Kuykendall with full notice of the applications that had already been filed by Spiller for oil and gas permits.

In support of the plea of estoppel, appellee has cited such decisions as Hamilton v. State (Tex. Civ. App.) 152 S. W. 1117; Forbes v. Withers, 71 Tex. 302, 9 S. W. 154; Lubbock v. Binns (Tex. Civ. App.) 50 S. W. 584; Montgomery County v. Angier, 32 Tex. Civ. App. 451, 74 S. W. 957; also articles 3894, 3895, and 3896 of the Statutes of 1879, providing that the district surveyor should keep in his office a register of entries, in which he shall register all entries or applications for land in his county or district; that an application to purchase shall describe the claim to be surveyed and the land applied for, and that the survey shall be made strictly in accordance with the application.

In Forbes v. Withers, our Supreme Court had this to say:

"The file, which is the initiatory step provided by the statutes then in force for the acquisition of public land by a holder of a land certificate, is merged in the survey. No defect in the file will attach to the survey. The field notes of the survey, after being recorded in the surveyor's office, are returned to the land office. The patent should include the field notes so returned for description of the land granted by it to the owner of the certificate. The laws afforded a means for enforcing the rights of the holder of the certificate to have the survey made in accordance with the file. If, however, the survey is acquiesced in by others adversely interested by reason of priority of location, and is received by the owner conceding rights which might have been enforced, such concession is final. The action of the surveyor is presumed to be proper, and the presumption cannot be disputed after the surveys have matured into patents. Hence the inquiry as to what lands are granted by the patent is directed to the survey as made, and not as it should have been made by the surveyor. The file then becomes immaterial, save as it may throw light upon the actual survey. Booth v. Upshur, 26 Tex. 68. The action of the court in its charges given and in the refusal of instructions asked upon the legal effect of the files was immaterial; and, as it was not calculated to injure the plaintiffs, they cannot complain."

In that suit no issue of estoppel was involved. As shown in the statement of the case, the only issue was as to the true location of the boundary line between two different surveys, it being conceded that the plaintiff owned title to one of the surveys and the defendant owned title to the other survey.

In the other two cases noted, to wit, Hamilton v. State and Lubbock v. Binns, similar expressions were used to those copied above from the opinion of Forbes v. Withers. However, the issues of fact in the Hamilton Case were of like character to those in Forbes v. Withers. In Lubbock v. Binns, a clear defense of estoppel was established against plaintiff Lubbock, as appears in the following excerpt from the syllabus of the opinion:

"For over 50 years claimants under a patent conveying the same amount, but not all the land included in the original certificate and survey, acquiesced in its correctness and validity. In the meantime purchasers acquired rights, under a later patent, in land which the prior patent should have covered, but did not cover, and held the same for over 40 years, until there was no unappropriated land on which to relocate under the certificate on which the later patent was issued. The claimants under the first patent did not disclaim title to any of the land covered by their patent, and the land covered by the later patent did not appear to be more valuable than that covered by the prior patent. Held, that the claimants under the prior patent were not entitled to have it corrected so as to interfere with the claimants under the later patent."

Article 4132 of the Civil Statutes of 1895, which applies to the surveys of the land covered by applications for purchase, reads as follows:

"The survey shall be made by a copy of the entry or application, and strictly in accordance with the same; and hereafter no survey shall be made until after entry or application, as provided in the preceding article."

Article 4145 of the same statutes provides that:

"The field notes of all surveys shall be returned to and filed in the general land office within twelve months from the date of the survey."

Article 4154 reads as follows:

"If, upon examination of the field notes of a survey in the general land office, they are found to be incorrect, it shall be the duty of the commissioners to cause a plain statement of the er-

rors, with a sketch of the map, to be forwarded by mail or by the party interested, to the surveyor who made the survey, with a requisition to correct the same and return corrected field notes to the general land office."

Since Benj. Stevens made application to purchase the south ¼ of section 2 in statutory form and placed the same in the hands of the surveyor to be surveyed, in accordance with the requirements of the statutes, and paid to the state the purchase price therefor, he thereby acquired an equitable title to the land covered by his application and purchase, even though the field notes of different surveys made thereafter were incorrect. His equitable title later ripened into a legal title when the land was correctly resurveyed by Sylvan Sanders and another patent issued in accordance with those corrected field notes; and appellants had the right to have such title awarded to them unless it can be said that Benj. Stevens and those claiming under him, including B. W. Clendenen and A. B. Kuykendall, are estopped from asserting such title as against the claim asserted by Kyle Spiller for oil and gas permits upon the same land.

[2] We have reached the conclusion that the evidence wholly fails to support the plea of estoppel so asserted by Spiller, since his own testimony showed that he was an experienced surveyor, having worked in the office of his father, George Spiller, for a number of years, made a thorough examination of the files showing the application for purchase by Benj. Stevens and the different sets of field notes made of the land covered by that application, and from those records reached the conclusion that the land in controversy was vacant land and filed his applications for oil and gas permits by reason of the information so obtained. The field notes by George Spiller, made in 1904 and carried into the patent, were ambiguous, describing the land as the south ¼ of the section and also as situated 160 varas north of the south boundary line of that section. Spiller was thus put upon notice that the field notes so made by George Spiller did not describe the land covered in the application for purchase filed by Benj. Stevens, and that the land commissioner had authority to have the land resurveyed and to issue another patent in lieu of the original patent. Furthermore, no proof was offered to show what expenses, if any, he incurred in filing his application for such permits and returning field notes for one of the 80-acre tracts. Evidently any expenses he may have incurred for such purposes would be negligible, to say the least.

[3-6] An estoppel cannot be invoked as an instrumentality of gain or profit; it can operate only to protect the person invoking it in a right which he has already acquired and which he would lose unless the party against whom it is urged is prevented from asserting a conflicting right which would be superior to that of the person invoking the estoppel. And if the estoppel invoked is one by deed of the adverse party, the burden is upon the one invoking it to show that he was misled to his injury by reason of his reliance upon the recitals in the deed, and that he had no notice of facts contrary to those recited. It is also the rule that the instrument under which the estoppel is claimed must be clear and unambiguous, and that if the description of the property contained in the instrument is self-contradictory, the deed will not support an estoppel. It is also the general rule that a recital inserted in a deed through mistake of the parties will not in equity be permitted to operate as an estoppel so·as to exclude the truth. Gjerstadengen v. Hartzell, 9 N. D. 268, 81 N. W. 230, 81 Am. St. Rep. 575, and other decisions there cited, including Davis v. Davis, 26 Cal. 23, 85 Am. Dec. 157; Townsend Sav. Bank v. Todd, 47 Conn. 190; 21 Corpus Juris, 1067, 1101, and 1102; ·Wortham v. Thompson, 81 Tex. 348, 16 S. W. 1059; Green v. Priddy, 112 Tex. 567, 250 S. W. 656; Pomeroy Equity Jurisprudence (3d Ed.) §§ 807–809.

For the reasons noted above, we are of the opinion that the judgment should have been rendered in favor of defendants.

[7] Furthermore, independently of the foregoing conclusions, we have reached the further conclusion that Kyle Spiller failed to establish his alleged right to the oil and gas permits for which he had applied and which were made the basis of his suit, for the following reasons:

Survey No. 2 was made by virtue of an alternate land scrip. By act of the Legislature, passed in 1889, as shown in Vernon's Sayles' Texas Civil Statutes, vol. 3, art. 5396, it was provided that surveys made by virtue of valid alternate scrip should embrace all lands "evidenced by the corners and lines of · same, or by calls for natural or artificial objects, or the calls for the corners and boundaries of other surveys, or by the maps and other records in the general land office."

By article 5397 (being section 2 of that act), it was provided that all excess in such surveys should belong to the public free school fund of the state, and it was made the duty of the commissioner of the general land office to ascertain, "by any and all means practicable, the existence and extent of such excesses, and to provide for and direct such surveys, or corrected surveys, as may be necessary for this purpose."

Article 5399 (section 4 of the act) reads:

"The provisions of this law shall not apply to nor affect the rights of the third persons heretofore acquired in good faith."

There was no competent proof that any action was ever taken by the commissioner of the general land office to ascertain the existence and extent of any excess in section 2,

B. S. & F. survey. Moreover, if he had attempted to determine such excess, then by virtue of the provisions of article 5399 he would have been prohibited from including therein the south 160 acres covered by the application to purchase filed by Benjamin Stevens before the passage of the act, which 160 acres is the land in controversy. Willoughby v. Long, 96 Tex. 196, 71 S. W. 545; Gale v. Wright (Tex. Civ. App.) 136 S. W. 1163; Wright v. Gale, 104 Tex. 450, 140 S. W. 91, 143 S. W. 141.

Prior to the passage of the act of 1889, Benjamin Stevens' right to purchase the land in controversy had already vested, and the land covered by his application was no longer a part of the public free school fund subject to sale by the commissioner, under provisions of article 5397, even though there was an excess in section 2. Nor was the sale to Benjamin Stevens ever canceled; but on the contrary, it was recognized and expressly ratified by the issuance of a corrected patent.

Article 5339, Rev. St. 1925, provides that an application for a permit to prospect for and develop oil and gas on public school lands of the state shall be filed with the county clerk of the county in which the land is situated if the land be in any "surveyed area"; and article 5340 provides that the application shall be filed with the county surveyor if the land is situated in an "unsurveyed area." Article 5348 of the same chapter provides that:

"Surveyed lands within the meaning of this law shall include all tracts for which there are approved field notes on file in the land office and eighty acre tracts and multiples thereof of such surveys.

"Unsurveyed areas within the meaning of this law shall include all areas for which there are no approved field notes on file in the general land office."

[8] Even though it could be said that the land in controversy belonged to the public free school fund, it was an unsurveyed area within the meaning of those articles of the statutes, since the commissioner of the general land office has never segregated it from the remainder of the section and set it apart as an excess therein, and there were no approved field notes of the same on file in the general land office at the time Spiller filed his applications for oil and gas permits; and his application and field notes of the north 81 acres filed with the land commissioner were expressly rejected. Although his application for an oil and gas permit on the north half of the land in controversy was filed with the county surveyor of the county, it was ineffectual, for the reasons noted above, and his application for such a permit on the south half was likewise void for the same reasons, and for the further reason that it was filed with

the county clerk and not with the surveyor of the county.

For the reasons noted, the judgment of the trial court is reversed, and judgment is here rendered in favor of appellants for the land in controversy.