**GILCREASE OIL CO. v. COSBY et al.**

No. 10334.

Circuit Court of Appeals, Fifth Circuit.

Jan. 20, 1943.

Rehearing Denied March 4, 1943.

Lester Whipple, of San Antonio, Tex., and Angus G. Wynne, of Longview, Tex., for appellant.

Lanham Croley and C. J. Shaeffer, both of Dallas, Tex., U. M. Simon, of Fort Worth, Tex., and L. F. Burke, of Longview, Tex., for appellees.

Before HOLMES and McCORD, Circuit Judges, and DAWKINS, District Judge.

DAWKINS, District Judge.

Plaintiff (appellant) seeks to recover from J. W. Croley, G. M. Cosby and B. A. Skipper, 7/8 of the minerals under a strip of land measuring 48 feet on the east, 41 feet on the west, and 1798 in length east to west, containing two acres. It prays that its title be sustained, that defendants (appellees) be enjoined from trespassing, for an accounting for oil, gas and other minerals removed and for damages in the sum of $50,000. The suit is one to establish title and fix boundary.

Originally there were two adjoining tracts, known respectively as the Henry Hathaway Survey, and the Wm. H. Castleberry Survey, adjoining on the south. In a deed recorded January 17, 1931, but dated October 10, 1925, Arthur Christian acquired a tract in the southeast corner of the Hathaway Survey, whose eastern line corresponded to that of the said Hathaway Tract and whose southern boundary was the line between it and the Castleberry Survey.

On April 28, 1930, Christian, his wife, and the former vendors joined in a lease to B. A. Skipper, describing the property as follows:

"All that certain tract or parcel of land situated in Gregg County, Texas, a part of the Henry Hathaway Headright Survey, and Beginning—at the N. E. corner of said survey:

"Thence—S with the E B line of said survey at 875 vrs a sweet gum for corner;

"Thence—the same being the S E corner of said survey;

"Thence—West with the South boundary line of said survey 630.6 vrs a stake for corner same being the S E corner of Colored School lot;

"Thence—North 243 vrs to the N E corner of said School lot;

"Thence—W 64.4 vrs the N W corner of said school lot;

"Thence—W 632 vrs a stake in branch on the N. B. line of said survey;

"Thence—East with the N B line of said survey 695 vrs to the place of beginning, containing 104 acres of land more or less.

"This being the same land deeded to us by J. M. Farmer et ux by deed recorded in Vol 38 page 189 of the Deed Records of Gregg County, Except 3 acres sold to the Colored School and church there being 100 acres of land, more or less in said tract purchased from J. M. Farmer but in a recent survey there was found to be 107 acres of land, more or less.

"It is intended herein to convey in this lease all the land we own in the above survey save and except 25 acres sold off of the N W corner of Earl Christian, deed recorded in Gregg County Records. It being the intention to include all land owned or claimed by Lessor in said survey or surveys. * * *"

On September 11, 1930, Skipper assigned this lease to W. W. Lechner, who in turn, on September 15th following, assigned it to J. E. Farrell. Farrell, on January 15, 1931, assigned it to Frank Foster; Foster on January 29, 1931, declaring his ownership of the lease under the same description, transferred to R. L. Foree: "* * * all rights, title and interest of the original lessee and present owner in and to said lease and rights thereunder in so far as it covers the South Thirty One (31) acres of the above described tract of land, together with all personal property used or obtained in connection therewith to R. L. Foree and his heirs, successors and assigns."

On April 30, 1931, Foree assigned to Shano Oil Company, using the same description of the 31 acres, and on July 31, 1931, Shano transferred to plaintiff, Gilcrease Oil Company.

Defendants' title begins with a lease from the same Arthur Christian, dated December 22, 1935, to J. E. Beavers, wherein the property is described as:

"A part of the W. H. Castleberry Survey,

"Beginning at the original NE cor. of the W. H. Castleberry survey the same being the SE corner of the Henry Hathaway survey, from which a 20" Sweet Gum bears S 28* 15' E, 51.6 ft. a 24" Post Oak bears S 53* 00' W 102.7 feet,

"Thence West on line between the said W. H. Castleberry and the Henry Hathaway Surveys, 1774 feet to a stake for corner, which is at the southeast corner of a two acre tract that was conveyed to the Colored Christian Church by W. C. Hurst, said corner being 194 feet East of the original south west corner of a certain 100 acre tract that was conveyed by J. M. Farmer to W. C. Hurst.

"Thence South 41 feet to a stake for the southwest corner of the tract herein conveyed,

"Thence following a fence on the North line of Thad Snoddy 50 acre tract, as follows, 88* 07' E 274 feet; S 87* 43' E., 400 feet; East 500 feet; N 81* 58' E 128.3 feet; East 473 feet, to a stake the southeast corner of this tract;

"Thence North 48 feet to the place of beginning and containing two acres, more or less."

On February 14, 1936, Beavers assigned this lease to J. W. Croley; on July 1, 1936, B. A. Skipper Oil Company and B. A. Skipper individually, quitclaimed to J. W. Croley their rights in the lease upon the same tract, and also "all rights, title and interest in and to that certain oil and gas lease, dated the 12th day of May, A. D. 1930, executed by Thad Snoddy and wife, lessors, to B. A. Skipper, lessee, and shown of record in volume 60, p. 195 of the deed records of Gregg County, Texas, insofar as the said lease covers and includes the above described land". Thad Snoddy had previously purchased from Susie Hilburn on October 17, 1921, a tract of land described as "being a part of the H. R. Survey of

Wm. A. Castleberry (in all other instances it is referred to as the Wm. H. Castleberry Survey), and more particularly described as follows:

"x x x being a part of the H R survey of W. A. Castleberry;

"Beginning at the N E corner of said survey;

"Thence—W at 840 vrs a stake from which a pine brs N 5 6 W 71/10 a pine brs S 2 E 3.1 vrs;

"Thence—S at 672 vrs, a stake from which a hickory brs N 61½ W 4.4 vrs;

"Thence—E at 840 vrs a stake from which a hickory brs N 33 W 2-3/5 vrs, a black jack N 17 E 1½ vrs;

"Thence—N at 672 vrs the place of beginning, containing in all one hundred acres of land. The interest herein conveyed being fifty acres on the N half of the said tract."

Thad Snoddy and his wife, on May 12, 1930, executed an oil and gas lease to B. A. Skipper, covering among other lands, the same tract which he had acquired from Susie Hilburn on October 17, 1921. (This is the same transfer referred to in the assignment by Skipper to Croley.)

From these references to the titles of the respective parties it is apparent that appellant's claim rests upon the chain from Arthur Christian and his wife, with a description which purports to have as its southern boundary the original line between the Hathaway and Castleberry Surveys; while that of appellees, although of a later date, also emanates from Christian, but is further based upon a transfer to Skipper from Thad Snoddy, who, at the time, was the owner of a tract, which had for its northern boundary the said original line between these surveys. The issue of fact, therefore, finally turned upon the actual location of the tract in dispute on the ground, as to whether it was embraced in the earlier title and lease to plaintiff; or was in the Castleberry Survey and acquired by Christian by limitation through use and occupancy. If the latter, and the original lease to Skipper did not include that portion south of the line between the Hathaway and Castleberry surveys, which was used and occupied, then the claim of defendants rests both upon the limitations title of Christian and the quitclaim deed from Snoddy, who owned the property south of the boundary line between the two tracts.

■ The testimony of the experts, surveyors, was in conflict, but the court below accepted that of the one which located the two acres in dispute outside of plaintiff's lease. Without reciting the conclusions of the respective surveyors it is sufficient to say that this ruling is supported by substantial evidence, both as to the record title and the testimony of one of the surveyors, and we are not justified in disturbing it. If, as a matter of fact, Christian had occupied the property south of the dividing line, between the Hathaway and Castleberry Surveys for a time sufficient to perfect title, the lease of plaintiff, which was earlier in point of date, did not necessarily include the strip in question. On the other hand, if it was a part of the Castleberry tract, the record title was in Snoddy, who subsequently quitclaimed it to defendants. It also appears that defendants drilled three wells on the tract in dispute after separate applications and hearings before the Railroad Commission of Texas, the body charged with the duty of determining whether permits shall be given, after notice to plaintiff who not only failed to appear and contest defendants' applications, but in each instance, obtained from the same authority permits to drill offsetting wells on their own property immediately north of these locations. It was only after defendants' wells had proved successful and large quantities of oil had been produced, that plaintiff determined to bring this suit.

■ Appellant contends that defendants are estopped because of acquiescence in describing the tract as extending to the north line of the Thad Snoddy property on the south "as evidenced by a fence * * *" and that said fence "has been used and recognized as the dividing line between the Thad Snoddy 50 acre tract and the Arthur Christian tract on the north for more than thirty years". Further, that defendants are judicially estopped to claim that the strip in controversy was "limitation land owned by Arthur Christian", by use and occupancy, because they had "obtained a quit claim deed or affidavit" from Snoddy, "disclaiming any land north of his fence" which deed had been made part of defendants' pleadings; that defendants had, before the Railroad Commission also claimed the tract in question under limitations of use and occupancy by Christian, and were now estopped to assert title from any other source, particularly

from Snoddy. As to this, it is well settled that title to real property can not be acquired by estoppel, especially where it is alleged to flow from deeds and transactions to which the one pleading it was not a party. Kuykendall v. Spiller, Tex.Civ.App., 299 S.W. 522. Plaintiff must stand or fall upon the strength of its own title. Rice v. St. Louis, A. & T. Ry. Co., 87 Tex. 90, 26 S.W. 1047, 47 Am.St.Rep. 72. See also 31 C.J.S. p. 199 et seq., Verbo Estoppel, § 15.

█ It can not recover upon the weakness of that of its adversary, or a showing that someone else may have an interest therein.

The judgment appealed from is affirmed.