**KIRBY LUMBER CORPORATION,**
Appellant,

v.

**M. J. CAIN et al., Appellees.**

No. 16862.

United States Court of Appeals
Fifth Circuit.

April 30, 1958.

William G. Fox, Houston, Tex., Fountain, Cox, Gaines & Fox, Houston, Tex., for appellant.

T. B. Barber, Port Arthur, J. R. Beck, Beaumont, Tex., A. A. DeLee, Port Arthur, Tex., for appellees.

Before JONES, BROWN and WISDOM, Circuit Judges.

JONES, Circuit Judge.

This is a controversy over the title to ninety acres, and a little more, of land in Liberty County, Texas. The appellant, which is a Delaware corporation, brought a suit in trespass to try title against the appellees, all of whom were citizens of Texas. The appellant sought recovery of the land, and judgment for the value of timber cut from the land and for the manufactured value of such timber.

Both appellant and appellees claim title under Pierre Blanchet, who owned a tract which had as its westerly boundary the Trinity River which here flows in a southwesterly direction. The south boundary of the Blanchet tract was the north line of the land of Edward Tanner and it extended about 10,000 varas, according to the plat of a survey introduced in evidence, east from the river. The north line of the tract is the south line of a tract then known as the Philip Miller land, and is parallel with and shown by the survey to be approximately 2200 varas distant from the south boundary. The survey shows it as extending about 8,150 varas east from the river. The east boundary was at right angles

to the north and south boundaries. In. 1834 Blanchet conveyed to G. Bernard 1500 acres of land Spanish measure comprised within the following limits:

Commencing at the North West corner of a league of land occupied now by Edward Tanner upon the Trinity River, running thence up said river on the Eastern bank one quarter of a mile;

Thence running due East and parallel with the upper line of the said Tanner League and in that direction fur [sic] enough to include fifteen hundred acres and should there not be enough within these limits to make out the fifteen hundred acres, the deficiency is to be made up off of the back part of this league of land from which this is taken by a line running due North and South and parallel to the back or eastern line of his league.

The appellees contended and the trial court agreed that this deed was ambiguous in its description, that the location of the metes and bounds was not determined and that the instrument must, therefore, be construed as creating an equitable right of selection rather than as a deed conveying specifically described property. This right of selection, the trial court further found, was not exercised.

■■■ As we read the description in the deed of Blanchet to Bernard, the property is capable of being located. At the outset there is a south boundary which is the north line of the Tanner league, a west boundary of the Trinity River, and a north boundary of a line running east from a point "up said river * * * one quarter of a mile" parallel with the Tanner line. It is obvious that using as the west boundary the area enclosed would be an area susceptible of ready computation but less than the designated 1500 acres. Thus there would be a deficiency to be made up off the back of the league. The "deficiency" area would be bound on the south by the line parallel with the Tanner line, that is the north line of the tract spe-cifically described, on the east by the east line of the Blanchet tract and on the north by the Blanchet north line. With three known boundaries of a quadrilateral tract and a known area, no surveying impediment exists to prevent the location of the fourth boundary. We think the deed description adequate to identify the lands intended to be conveyed. Mansel v. Castles, 93 Tex. 414, 55 S.W. 559; Tompkins v. Thomas, 54 Tex.Civ.App. 440, 118 S.W. 581; McDonald v. Denson, Tex.Civ.App., 199 S. W.2d 707. G. Bernard, by deed of May 2, 1838, conveyed or purported to convey to Arnold Thouvenin an undivided interest of 375 acres of the 1500-acre tract. This deed, it seems, conveyed an undivided 375/1500ths of the 1500-acre tract rather than an equitable right to select and locate a specific 375 acres out of the whole. Turner v. Hunt, Tex. Com.App., 131 Tex. 492, 116 S.W.2d 688, 117 A.L.R. 1066. Thouvenin, by a deed dated January 23, 1853, quitclaimed to W. C. Abbott the piece of land containing 1500 acres "as sold and conveyed by Pierre Blanchet to Genereaux Bernard and by said Genereaux Bernard to me: Beginning at the northwest corner of the league of land known as the headright of Edward Tanner, Sr., thence up said river one quarter of a mile, thence East parallel with the North line of said Tanner's league far enough to make said one thousand five hundred acres, thence South to said line, thence West to the beginning corner." By another deed dated July 1, 1853, Thouvenin purported to convey to Abbott a parcel of land being 375 acres of land, "the same being purchased by me of G. Bernard by deed bearing date the 2nd day of May, 1838, and recorded in Liberty County in Book C, pp. 218 & 219." These deeds were regarded by the trial court as expressing an intent to create a 375-acre equitable right of selection. We think Bernard had retained an undivided 1125/1500ths of the parcel he acquired from Blanchet and Thouvenin had a 375/1500ths undivided interest. Thouvenin could have conveyed to Abbott no more than he had. But since we con-

clude that Blanchet passed title to Bernard, it would seem unnecessary to ascertain what Abbott received from Thouvenin, if anything, since Abbott did not, so far as the record shows, convey or otherwise transmit a title that is claimed by any party to this cause. In 1900, a decree was entered in favor of Mrs. Ann C. Abbott against the heirs of Pierre Blanchet for 1875 acres of land which included the 90 acres involved here. The relationship of Ann C. Abbott to W. C. Abbott, if such there was, is not shown. Mrs. Abbott gave a deed to Royal Matthews in 1903 and he purported to convey to the plaintiff, Kirby Lumber Corporation.

Blanchet, on May 9, 1851, gave a deed to John B. Herpin of

"all that certain tract of land situated in the County of Liberty, State of Texas, containing three hundred and seventy nine acres the tract being the east end of a tract granted to me, Pier Blanchet as assignee of Augustine Martinez de Lajarga, by the State of Texas Coahuila and Texas and bounded west by the Trinity River, North by lands granted to Edward Tanner."

No doubt the north boundary was intended to be described as the Philip Miller grant. Then by another deed of May 9, 1851, Blanchet gave a deed to Thaddeus Seymour purporting to convey,

"that certain tract of land containing Ninety acres, situated in the County of Liberty, State of Texas, bounded East by lands sold by me to John B. Herpin, North by lands granted to Philip Miller, South by lands granted Edward Tanner, West by land belonging to Pierre Blanchet."

This description was incorporated in a deed of July 20, 1852, to John Cartright, whose heirs are defendants in this cause.

The trial court concluded that Blanchet and Thouvenin, by executing deeds in 1851 and 1853, treated the provisions in the deed from Blanchet to Bernard to be one of equitable selection of lands, which had been abandoned because the same had not been exercised within a reasonable time. The findings of the trial court do not, however refer to a deed of Blanchet to Jacob De Petra dated November 25, 1857, by which it was intended to convey,

"The following described tract of land to contain Three Hundred acres, to-wit: Beginning on the East side of The Trinity River, at the corner of my land & Philip Miller's Survey, fronting one quarter of a mile on said river, and running with said Miller's South line to the West line of a tract of land sold by me to G. Bernard."

From this it would seem that Blanchet recognized the validity of his deed to Bernard and treated it not only as conveying land which, in 1857 at least, had been located, but also as conveying specifically located land of substantial area off the back or eastern part of the Blanchet tract. This does not seem consistent with the trial court's conclusion.

The court house of Liberty County, Texas, burned in 1874, and all of the public records of the County were destroyed. The plaintiff asserts that it has a direct chain of title from Blanchet through the judgment of Mrs. Abbott against his heirs and that Matthews, her grantee, would be presumed to be a purchaser without notice and hence took free from any claims not then shown by the record. The deed from Blanchet to Bernard was recorded in 1901 and so was of record when Mrs. Abbott gave her deed to Matthews in 1903.

The plaintiff, in support of this position, brings to our attention a provision of the Texas statutory law which provides:

"When any original paper mentioned in the first article of this subdivision may have been saved or preserved from loss, the record of said originals having been lost, destroyed or carried away, the same may be recorded again, and this last registration shall have force and effect from the filing for original registration; provided, said originals are recorded within four years ·

next· after such loss, destruction or removal of the records." Vernon's Ann.Tex.Stat. Art. 6588.

This, says the plaintiff, puts Mrs. Abbott in the same position as she would have been in as a grantee of Blanchet's heirs and gives to her grantee, Matthews, the status of a purchaser for value without notice. This contention, if it could be sustained in any event, could only be relied upon if the deed of Blanchet to Bernard was the grant of a right of selection which by the lapse of time might be presumed abandoned. We have determined that the deed to Bernard was a conveyance of specifically described property which was filed for record in 1901, prior to the Abbott deed to Matthews, so that Matthews could not have been without notice that Blanchet had or may have parted with title to the 90 acres before Mrs. Abbott procured her judgment. See 36 Tex.Jur. 498, Records and Registration Acts, § 61.

In the findings of fact of the trial court, the Abbott-Dutton judgment is referred to as a partition judgment and the suit in which it was entered was described as a partition suit. The defendants urge that a judgment in partition cannot operate as a conveyance, and authority of Texas decisions is cited in support of this announced principle. The extent, if any, to which this doctrine influenced the trial court's decision does not appear. We do not think the suit of the Blanchet heirs against Mrs. Abbott was, as between plaintiffs and defendants, a partition suit. A certified copy of the petition is in evidence in this cause. It prays that plaintiffs have judgment for title and possession. In the Dutton v. Abbott suit there was a prayer for a partition among the plaintiffs and "if the defendant [Mrs. Abbott] should recover any of said premises" for partition of the interests of plaintiffs and defendants. That suit, we think, like the one we here consider, was a suit in trespass to try title. The partition phases there were incidental to it just as the claims here for cutting timber are incidental to and dependent upon the determination of the title issue.

In addition to the instruments of record, evidence was received by which the defendants sought to prove and the plaintiff sought to refute the recognition by the plaintiff of the ownership by the heirs of Cartright, and of the dominion asserted by them over the land in question. The trial court found as a fact that the plaintiff had recognized that the land here involved was not owned by it by reason of timber cutting operations, and concluded as a matter of law the plaintiff should not recover because of the recognition of the defendants' interest through the years. The doctrine of acquiescence or estoppel as applicable to a title dispute was considered by this Court in a title controversy arising in Texas. It was said:

"As to this, it is well settled that title to real property can not be acquired by estoppel, especially where it is alleged to flow from deeds and transactions to which the one pleading it was not a party. Kuykendall v. Spiller, Tex.Civ.App., 299 S.W. 522." Gilcrease Oil Co. v. Cosby, 5 Cir., 1943, 132 F.2d 790, 793, certiorari denied 320 U.S. 772, 64 S.Ct. 77, 88 L.Ed. 462, rehearing denied 320 U.S. 814, 64 S.Ct. 258, 88 L.Ed. 492. See Wipff v. Wipff, Tex.Civ.App., 209 S.W.2d 947, 949.

The plaintiff in a suit in trespass to try title must prevail through the strength of its own claim and not the weakness of that of the defendant. 41A Tex.Jur. 665, Trespass to Try Title § 138. The trial court held the plaintiff had not sustained the burden. We come to the conclusion that the trial court did not correctly determine the legal effect of the title documents. We cannot say that either plaintiff or defendants can deraign a good title of record. The cause should, we think, be again tried with the correct construction placed upon and the proper legal effect given to the instruments of record so that, as evidence, they may be fairly weighed along with such other proper evidence as may be submitted. For a new trial the cause is

Reversed and remanded.