### J. H. HUGHES V. P. W. SANDAL AND ANOTHER.

A boundary corner or line may be shown to be inaccurately described in the conveyance, and the land intended to be described therein identified by further evidence than the description given in the instrument.

Parol evidence as to the locality of natural objects referred to in the bond or deed, and called for in the description of the land conveyed; the acts of the purchaser indicating his understanding as to what land was embraced in the calls; and the conversations of the vendor and vendee as to their understanding of the boundaries as described, are competent testimony for the purpose of identifying the tract described in the conveyance.

The rule that parol evidence shall not be received to alter or contradict a written instrument, applies to controversies between the parties to it, and to those claiming under them, and not to strangers.

ERROR from Walker. Tried below before the Hon. Peter W. Gray.

This was a suit of trespass to try title brought by Joseph H. Hughes, a minor, suing by his next friend and guardian, Martha Trowell, against Peter W. Sandal and John W. Naul for the recovery of six hundred and forty acres of land "on Sandy creek, and beginning at the southwest corner of James Thompson's league, and running on the south line of said league one mile, so as to include six hundred and forty acres in said tract."

The defendants, by their answer, specially denied that the land owned and claimed by them is included in the tract sold and conveyed by James Thompson, the original grantee of the league, to Thomas M. Hughes, the plaintiff's ancestor. That the land thus conveyed was not intended by the parties to the conveyance to embrace that occupied and claimed by the defendants, nor that the survey of the tract sold should commence at the point claimed by the plaintiff as the beginning point; but was intended to begin at a different point, which was inaccurately described in the bond to Hughes. They ask that proof be taken to show the true beginning corner.

The bond from Thompson to Thomas M. Hughes to make title, on which the plaintiff relied, described the land as being "on Sandy creek, beginning at the southwest corner of said Thompson's

Hughes v. Sandal.

league of land, whereon he now lives, on the south line running one mile, including a certain improvement of ten acres of land formerly purchased of said Thompson of Thomas Webb, being the place whereon Charles Langham now lives, and to be run so as to square six hundred and forty acres in said above mentioned tract."

If the beginning point of the tract above described, the southwest corner, is at the point designated as A, the titles of the plaintiff and defendants do not conflict. The defendants held respectively under subsequent conveyances from Thompson of tracts of land which were included in a section of the league having the point D for a corner.

A jury was waived, and judgment rendered for the defendants. The other facts of the case sufficiently appear from the opinion.

*A. P. Wiley*, for the plaintiff in error.

*Branch & Abercrombie* and *Banton*, for the defendants in error.

ROBERTS, J.—The league of land was oblong in shape. The longer parallel lines ran about northeast and southwest, and the shorter lines ran about northwest and southeast. The defendants below were in possession of and claimed lands in the most southern corner of the league, designated in the plot given in evidence as corner A. They alleged that the section of land sold by Thompson to Hughes, and described in the bond for title, was situated in the most western corner, designated in the plot as corner D. The corners might more properly be designated as southern, western, northern and eastern, than otherwise. The witnesses differed about which one of the corners, A or D, could be most properly called the southwestern corner, so as to answer the description of the beginning corner in the bond.

For the purpose of identifying D as the corner designed to be described in the bond, the defendants below proved by the witnesses that the creek referred to in the bond, also the Webb improvement, were in the section of land situated in the more western corner, D; and that Hughes, the purchaser, commenced the digging of a

well in this section. They also proved conversations of Hughes, in which he spoke of a prairie, and other natural objects, situated in this section, as being on the land he had purchased of Thompson; and also conversations of Thompson, designating the land sold to Hughes as being in the corner D.

This evidence was objected to "on the ground that parol evidence was not admissible to control the calls of a deed or title bond."

The objection made is not applicable to the evidence adduced; for the evidence was not offered for the purpose. contemplated in the objection. The description of the land in the bond is not ambiguous. The ambiguity arose upon the evidence when the plaintiff sought to identify the land described in the bond. Such ambiguity thus arising, may be "removed by the production of further evidence upon the same subject, calculated to explain what was the estate or subject-matter really intended to be granted." (Miller v. Travers, 8 Bing., 526.) Under this rule the Supreme Court of the United States sanctioned the admission of the verbal declarations of intention of both parties to a deed, in a case similar in principle to the one now under consideration. (Atkinson's Lessee v. Cummins, 9 Howard R., 484.)

Such verbal declarations are admissible when the description in the written instrument would apply to more than one person, or to more than one estate or subject-matter; and where the description, when it comes to be applied, is found to be incomplete or inaccurate in part, and true in part. (Miller v. Travers, 8 Bing., 528; 1 Greenleaf, § 390, 301.) The entire description in the instrument "must be taken, and the identity of the land ascertained by a reasonable construction of the language used." (Ib.; also Greenleaf, § 301.)

In this case, the effort to identify the land showed that there was no corner that accurately answered the description in the bond—"southwestern." Nor was there any line that could accurately be called the southern line. But the Webb improvement and the creek called for in the bond were natural objects, and were parts of the description that could only apply to the more western corner, D. They, when ascertained, removed the ambi-

guity in the call for the southwestern corner and southern line. (Urquhart v. Burleson, 6 Tex. R., 511.)    And. to remove all doubt, the declarations of the parties showing the locality of the land intended to be conveyed, were admitted.    (9 Howard, U. S., Rep., 484.)

There is also another view of the matter which makes this evidence admissible.    The defendants below were not parties to this instrument, and were not bound by any misrecitals of facts contained in it.    "The rule of evidence that where the parties to a contract have reduced their agreement to writing, parol evidence shall not be received to alter or contradict the written instrument, applies to controversies between the parties, and not to those claiming under them.    The parties have constituted the written instrument to be the authentic memorial of their contract; and because of this compact, the instrument must be taken, as between them, to speak the truth, and the whole truth, in relation to its subject-matter.    But strangers have not assented to this compact, and, therefore, are not bound by it.    When their rights are concerned, they are at liberty to show that the written instrument does not disclose the full and true character of the transaction."    (Reynolds v. Magness' Executors, (Jus. Gaston,) 2 Iredell Law R., 26 ; 1 Greenleaf, § 279.)

We are of opinion that there is no error in the judgment, and therefore it is affirmed.

Judgment affirmed.