MONTGOMERY COUNTY v. E. L. ANGIER.

Decided May 14, 1903.

**Survey—Abandonment by Corrected Field Notes—Conflict.**

Where, in a case of conflicting surveys, plaintiff's only title to the land in dispute was the field notes of his survey as originally made, and he had corrected field notes made omitting the part of the land thus in conflict, which corrected field notes he filed in the General Land Office, and the Commissioner thereupon canceled the original field notes and issued patent upon the corrected ones, this was an abandonment of any claim to the land so omitted, irrespective of plaintiff's intention in the matter, and his title to the omitted part was thereby annulled.

Appeal from the District Court of Walker. Tried below before Hon. J. M. Smither.

*Ball, Dean & Humphrey* and *J. W. Lewis,* for appellant.

*McKinney & Hill,* for appellee.

PLEASANTS, Associate Justice.—This is an action of trespass to try title brought by the appellee against the appellant to recover a tract of 160 acres of land in Walker County. The land in controversy is a part of a 320-acre survey located on August 12, 1857, by virtue of a certificate issued January 24, 1857, for an unlocated balance of certificate No. 1081 for one-third of a league of land, issued to the heirs of John Heyser on February 12, 1839, and is also covered by a location made for Montgomery County on August 20, 1857. A patent was issued to Montgomery County for said land on December 5, 1874.

The plaintiff claims title under the heirs of John Heyser. The Commissioner of the Land Office refused to patent the land to the heirs of John Heyser because of the conflict with the Montgomery County survey, and on September 20, 1900, plaintiff procured a survey of the land to be made, leaving out that portion in conflict with the Montgomery County patent, and on September 25, 1900, filed the field notes of said survey in the General Land Office as corrected field notes of the John Heyser survey. Upon the filing of these field notes the field notes of the original location were canceled, and patent issued to the heirs of John Heyser for the land included within the boundaries of the corrected field notes.

Plaintiff's title to the John Heyser survey is deraigned through Adam

and Elizabeth Heyser, who conveyed said survey to John Y. Hill by deeds dated June 16, 1838, and April 14, 1854, respectively. Adam Heyser by his deed conveyed to said Hill "all grantor's interest in lands or land certificates granted to John Heyser." The deed from Elizabeth Heyser conveys "all grantor's interest in the John Heyser certificate No. 1081 for one-third of a league of land." Plaintiff acquired the title conveyed to said Hill by these deeds.

The only evidence as to who were the heirs of John Heyser is found in the testimony of one L. D. Heyser, whose relationship, if any, to John Heyser is not shown. His testimony is as follows: "My name is L. D. Heyser. I am 29 years of age. I reside at No. 525, East Jefferson Street, Louisville, Jefferson County, Kentucky. I knew by reputation Adam Heyser and Elizabeth Heyser; did not know them personally. They are both dead. Both died at Millerstown, Grayson County, Kentucky. Lived at Millerstown, Kentucky, from the time they came to Kentucky, many years ago, until their death. They were not related to each other except as husband and wife, known to me; what I know of these things are from family history. As stated, I only knew Adam and Elizabeth Heyser by reputation. But knew personally the following persons who are the children of said Adam and Elizabeth Heyser: Thomas Heyser, Adam, Jr., and Daniel (men) ; Elizabeth, Katie, Mary E., Marguerite (women). By reputation I knew the following: William, John and Docia. There was another brother and sister; their names I can not give. I only knew that there was a son named John Heyser by reputation and family history, also that he was killed while serving in the war with Mexico. Date I do not remember and place I do not remember. The family history gives John Heyser as being a single man at the time of his death, 'never having been married.' I have stated that Adam and Elizabeth Heyser were husband and wife, and that they had a son named John Heyser, and that said John Heyser was killed in the war with Mexico, all of which I gathered from family history and general reputation."

To cross-interrogatories this witness testified: "I have resided in the county of my present residence eleven months last past; moved there from Litchfield, Grayson County, Kentucky. Had resided at the place from which I moved two years. I never saw either Adam Heyser or Elizabeth Heyser. I only know from family history and general reputation that Adam Heyser and Elizabeth Heyser were husband and wife. I never saw John Heyser; only knew from family history and general reputation that he was the son of Adam and Elizabeth Heyser. I do not know of my own personal knowledge that John Heyser was not a married man. I do not know of my own knowledge that Heyser did not leave any children surviving him. I do not know of my own personal knowledge that the persons that I have named are the brothers and sisters of John Heyser, but from family history and general reputation, and from facts laid down in an old family Bible now in my possession, I have reason to believe they are. I do not know of my per-

sonal knowledge that the persons whom I have named as the brothers and sisters of John Heyser were the only brothers and sisters of the said John Heyser. No, I do not know how many children were born to Adam and Elizabeth Heyser and what became of them."

The cause was tried in the court below without a jury, and judgment rendered in favor of plaintiff for the land in controversy, from which judgment the county of Montgomery prosecutes this appeal.

It is unnecessary for us to determine the question of the sufficiency of the evidence to sustain the finding of the lower court that Adam and Elizabeth Heyser, under whom plaintiff claims title, were the heirs of John Heyser, because the plaintiff voluntarily procured the cancellation of whatever title the heirs of John Heyser may have had to the land in controversy. The filing in the General Land Office by plaintiff of corrected field notes of the John Heyser survey and the procurement by him of a patent to the John Heyser survey as described in said field notes was an abandonment of any claim he might have had under the field notes of the original survey to land not included in the corrected field notes.

The only evidence of title to the land in controversy in the heirs of John Heyser was the field notes of the original survey. When a new survey of the Heyser location was made by plaintiff and the field notes of said survey filed in the Land Office by him as corrected field notes of the original location and a patent obtained for the John Heyser survey as described in said field notes, such corrected field notes superseded the original field notes and rendered them void for all purposes. The cancellation of the original field notes destroyed the only title which plaintiff had to the land in controversy, and judgment should have therefore been rendered for the defendant. Plaintiff testified that he did not intend to abandon his claim to the land in controversy by filing corrected field notes of the John Heyser survey and obtaining a patent thereon which did not include the land in controversy, but this is immaterial. The effect of the filing of the corrected field notes and the issuance of a patent thereon at the request of plaintiff was to cancel the original field notes and thus annul the only title under which plaintiff claimed the land in controversy, and this result was accomplished regardless of plaintiff's intention.

We think the judgment of the court below should be reversed and judgment here rendered for the defendant, and it is so ordered.

*Reversed and rendered.*

Writ of error refused.