Appeal and error ☞781(7)—Payment of judgment by stranger to record renders case moot.

The payment of the judgment by one who was a stranger to the record precludes recovery against the judgment debtor, and renders the case moot, so that a writ of error to the judgment will be dismissed without a determination of the questions raised.

Error to Court of Civil Appeals of Second Supreme Judicial District.

Suit by Young County against I. B. Padgitt and others, in which the Graham National Bank and its sureties were also made defendants. A judgment for plaintiff against the original defendants, and denying the latter recovery against the bank and its sureties for the amount of such judgment, was affirmed by the Court of Civil Appeals (204 S. W. 1046), and the original defendants bring error. Writ of error dismissed.

I. W. Stephens, Taylor, Allen & Taylor, and Miller & Miller, all of Fort Worth, for plaintiffs in error.

Jno. O. Kay, P. A. Martin, Corrigan, Montgomery & Britain, and J. W. Akin, all of Wichita Falls, for defendants in error.

PHILLIPS, O. J.  This case is withdrawn from the Commission of Appeals.

It appearing that the judgment against the plaintiffs in error which is sought to be here reviewed has been paid and satisfied and the liability of the plaintiffs in error extinguished, we can see no reason for continuing the case here and determining the questions presented, as the plaintiffs in error insist. While the payment of the judgment seems not to have been made by the plaintiffs in error themselves, but by a stranger to the record out of whose transactions the suit arose, yet it is not controverted that the payment made has been accepted by Young County, the judgment creditor. This precludes any further assertion by Young County of the liability of the plain-

tiffs in error. Young County has by motion here advised us· of such payment and expressly recognizes the satisfaction of the judgment. The case has therefore become moot, and the writ of error is ordered dismissed.

---

**ANDERSON v. ROBISON et al.  (No. 3346.)**

(Supreme Court of Texas.  March 23, 1921.)

Public lands ☞173(7)—Purchasers of school sections have prior right to purchase proportionate part of excess land.

Where a section surveyed for the public school fund and described as containing 640 acres contained in fact 652 acres, and the different quarters were patented to different persons as containing 160 acres each, the purchasers had a prior right to their proportionate parts of the excess, and such right was given special application in article 5397, Rev. St. 1911.

Original petition by J. E. Anderson for a writ of mandamus against J. T. Robison, Commissioner of the General Land Office, and others. Writ denied.

Black & Smedley, of Austin, for relator.

Nickels, Funderburk & Strickland, of Eastland, O. M. Cureton, Atty. Gen., and E. F. Smith, Asst. Atty. Gen., for respondents.

PIERSON, J.  Relator brought this action for a writ of mandamus to compel the Commissioner of the General Land Office to issue to him a permit to prospect for and develop petroleum, oil, and natural gas upon a 12-acre excess alleged to be in the north part of the southeast quarter of section No. 10, block 4, certificate 26/1540, Houston & Texas Central Railway Company, grantee, in Eastland county, Tex., and to reject the application for a permit upon said land made by the respondent A. P. Barrett.

Said section No. 10 was surveyed for the public School Fund by the Houston & Texas Central Railway Company by virtue of valid alternate scrip, and was described in the field notes filed in the General Land Office on December 15, 1868, as being 1,900 varas square and containing 640 acres of land.

In 1886 the northwest quarter of said section was patented by the state of Texas to D. L. Dobbs, containing 160 acres. In 1893 the northeast quarter of said section was patented to J. C. Littleton, containing 160 acres. In 1903 the southwest portion of said section was patented to W. H. Miller, containing 160 acres. In 1898 (before the date of the last-named patent) one J. L. Ruark had applied for and been awarded the "S. E. ¼, section 10, block 4, certificate·26/1540, Houston & Texas Central Railway Company, grantee, 160 acres, price per acre $1.50." By mesne conveyances through and under the

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

said J. L. Ruark the southeast quarter of said section 10 was purchased by and conveyed to J. A. Beard, who acquired said land in 1918. In the conveyances from Ruark down to Beard the land was described as the southeast quarter of section 10, block 4, etc., containing 160 acres.

On May 6, 1919, respondent A. P. Barrett filed with the county surveyor of Eastland county his application for a permit upon the excess in the southeast quarter of said section 10. Said surveyor surveyed and made field notes of said excess on May 8, 1919, and same were filed in the General Land Office on May 21, 1919.

On May 22, 1919, the said J. A. Beard filed field notes for 160 acres out of the southeast quarter of section 10, block 4, designating said 160 acres by metes and bounds beginning at the southeast corner of said section 10, and received a patent therefor, and at the same time filed a waiver as to excess in the southeast quarter of said section.

The Land Commissioner in his answer, and more fully in his argument, sets out that said section 10 in fact contained 652 acres of land, instead of 640 acres, and that the entire section had an excess of 12 acres, at least as shown by the present state of the records of the Land Office. Relator assumes and treats said excess as being wholly within the southeast quarter of said section 10, but the Commissioner of the General Land Office sets out that said section contains 652 acres, instead of 640 acres of land, and that it is a mathematical impossibility for the southeast quarter or any other quarter of said section to contain 172 acres, or the 12-acre excess in addition to the 160 acres belonging to the quarter section. If it is a question of fact as to whether the 12-acre excess is in the southeast quarter or is in the entire section No. 10, this application would have to be dismissed. But from a full reading of all the pleadings and argument it appears reasonably clear that the excess belongs to the entire section No. 10; i. e., that section No. 10 contains 652 acres of land, and that purchasers of each quarter section have had surveyed and patented to them 160 acres out of each quarter, leaving a 12-acre excess within the section.

The contention between the parties to this litigation is as to whether or not Barrett's application was premature, inasmuch as relator claims that Beard, who held title from Ruark, had a prior right to purchase the excess in his quarter section, and therefore that respondent Barrett's application was premature, and that the land was not subject to the application in that condition. On the other hand, respondent Barrett contends that the excess in the whole section No. 10 belonged exclusively to the public school fund, and that article 5397, giving a "prior right" to a purchaser of a survey to apply for and be awarded the excess in that survey upon paying the original purchase price, does not apply to purchasers having purchased only a part of a survey instead of the whole. If relator Anderson's contention is correct, then it would be clear that the applications of both parties, relator and respondent Barrett, would be premature, and would have to be denied, for the reason that the purchasers of the other three quarter sections would be entitled to a "prior right" to purchase their respective parts of the excess, after same had been segregated by resurvey as provided by the statute.

Article 5397, R. S. 1911, reads as follows:

"All excess in said surveys are donated and declared to belong to the public free school fund of the state; and it shall be the duty of the Commissioner of the General Land Office to ascertain, by any and all means practicable, the existence and extent of such excesses, and to provide for and direct such surveys, or corrected surveys, as may be necessary for this purpose: Provided, that, where such surveys were made in blocks of two or more surveys, said respective surveys shall remain on the ground consecutively as placed therein, as shown by the maps, sketches and field notes originally returned to the general land office: Provided, that the person who has already purchased, or who may hereafter purchase from the state the particular section to which surplus shall by such resurvey be made contiguous, shall have the prior right for the period of six months after such resurvey shall have been made, in which to purchase such excess on the same terms on which such purchaser has already bought or may buy."

The question therefore that is determinative of this case is: Do the purchasers, or their successors, of the four quarters of section 10 have the prior right to purchase the excess from the state? An affirmative finding on this issue would make it unnecessary to answer the other issues raised in the case. The question is not without its difficulties, and is one of some importance in its general application. In the case of Willoughby v. Long, 69 S. W. 646, the Court of Civil Appeals for the Third District held that, in order for the above-mentioned article to apply, the person invoking its protection must show that he is the purchaser of the entire section, before he can claim the prior right to purchase the excess. That case was reversed and rendered by this court: First, on the ground that the purchase included the entire survey of 960 acres, notwithstanding the field notes call for only 640 acres; and, second, that the vendor had a right to demand pay for the excess at the stipulated price per acre, and could have the excess partitioned and set aside to him only upon default of such payment. This court in numerous cases has held that, when the state becomes a party to a contract with a citizen, the same law applies to it as under like conditions governs the contracts of individuals. State v. Kroner, 2 Tex. 492; State v. Pur-

cell, 16 Tex. 305; State v. Snyder, 66 Tex. 700, 18 S. W. 106; Fristoe v. Blum, 92 Tex. 80, 45 S. W. 998; Jumbo Cattle Co. v. Bacon & Graves, 79 Tex. 5, 14 S. W. 840; Willoughby v. Long, 96 Tex. 199, 71 S. W. 545.

In the case of Willoughby v. Long, 96 Tex. 199, 71 S. W. 547, referred to above, Judge Gaines, after holding that the purchase included the whole section, used the following language:

"In this case the sale was clearly by the acre, and there was a large excess in the survey over the estimated quantity. If the sale had been made by a natural person, the right of the vendor would have been to demand pay for the excess at the stipulated price per acre, and in default of such payment to have the surplus set apart to him by a partition. O'Connell v. Duke, 29 Tex. 299. He might sell his claim and thereby confer upon his assignee the right to sue for payment for the excess, or in the alternative to recover the excess itself by a suit therefor."

Applying these principles to the instant case, it will be seen, in the absence of a statute giving a prior right to the vendee to purchase excess from the state, that under the right of contract, each application having been for a quarter of section 10, this right would accrue to each purchaser. This is true in this case, unless it was the purpose of article 5397 to repeal and change that rule. There is nothing in the legislation upon this subject that would justify that construction. It is reasonably clear that in the passage of article 5397 the Legislature merely gave special application to that well-known business rule or principle to the purchases made under its provisions, but fixed a limited time of six months after a resurvey within which the purchasers must exercise their right.

The contracts between the state and the purchasers of school section No. 10 had already vested in the latter the prior right to its excess, upon payment therefor.

The conclusion is inevitable, therefore, that the purchasers of each of the four quarters of said section No. 10 had the prior right to their proportionate parts of the excess in said section, and that said land was not subject to either application; both applications being premature.

The writ of mandamus is denied.