OUTLAW et al. v. GULF OIL COR-
PORATION et al.

No. 3894.

Court of Civil Appeals of Texas. El Paso.
Jan. 18, 1940.

Rehearing Denied Feb. 23, 1940.

Massingill, Belew, Hill & Paddock, and Ben. M. Terrell, all of Fort Worth, for plaintiffs in error.

Gerald C. Mann, Atty. Gen., Geo. W. Barcus, H. Grady Chandler, Robert E. Kepke, and James Noel, Asst. Attys. Gen., P. O. Settle, Wm. L. Wise, W. E. Allen, and James & Connor, all of Fort Worth, Whitaker, Perkins & Turpin, of Midland, H. L. Stone, of Pittsburgh, Pa., John E. Green, Jr., of Houston, and W. H. Burges, of El Paso, for defendants in error.

PRICE, Chief Justice.

We adopt as the statement of the nature and result of this suit that contained in the brief of plaintiffs in error. This was an action of trespass to try title brought by the Gulf Oil Corporation, Federal Royalties Company and Clarence Scharbauer against Rex C. Outlaw to recover title to and possession of a small strip of land alleged to be out of and a part of Sections 21, 22, 27 and 28, Block 44, Township 1 South, T. & P. Railway Company Survey, Ector County, Texas.

In addition to a general demurrer and general denial defendant Rex C. Outlaw disclaimed any right, title or claim to the lands described in plaintiffs' petition, save and except a rectangular strip of land 31½ by 91 varas, containing 10.6 acres and lying between and bounded by the patented sections 21, 22, 23 and 27, in said Block 44.

The State of Texas, acting for itself and in behalf of the Public Free School Fund, filed its intervention, alleging that it was the owner in fee simple of the lands described in the answer of the defendant Outlaw for the benefit of the Public Free School Fund of Texas, subject to State mineral lease No. 22243, executed to Rex C. Outlaw on August 13, 1937. Intervener sued for title to and possession of said land and for damages occasioned by the alleged unlawful acts of plaintiffs.

Plaintiffs filed their answer and cross action against said intervener, and defendant Outlaw filed his answer to said plea of intervention, disclaiming therein any right, title or claim to the land described in said plea of intervention, save and ex-

cept an undivided seven-eighths of all the oil, gas and sulphur and fifteen-sixteenths of all other minerals in and under said land.

At the conclusion of the evidence, on motion of the plaintiffs, the court instructed the jury to return a verdict in favor of plaintiffs against the defendant and intervener for title and possession of the land sued for. Judgment was rendered in accordance with the verdict and defendant and intervener have duly perfected a writ of error therefrom.

For convenience the parties will be designated as they were in the trial court. Plaintiffs in error being called defendant and intervener, respectively, and the defendants in error will be referred to as plaintiffs.

There is in reality but one question involved in this appeal. This question is the proper construction of the patent issued by the State of Texas to Section 22, in Block 44, Township 1 South, T. & P. Railway Company Survey in Ector County. If a proper construction of this patent was that the south line of said Section 22 and the north line of Section 27, in the same block, are coincident, the action of the trial court in instructing a verdict was proper and should be affirmed.

A question of fact was involved in the construction of the patent; hence a discussion of the evidence is necessary. The land in controversy is within Block 44, Township 1 South, Ector County. This block was surveyed by virtue of Land Certificates issued to the Texas & Pacific Railroad under an Act of May 2, 1873, whereby twenty sections of land were donated for each mile of road completed. Under this Act the Company was required for each Certificate to survey two sections and return the map and field notes to the General Land Office. The Land Commissioner then was required to number such sections and issue 'patents to the Company for the odd numbered sections. The even numbered sections were reserved to the State for the benefit of the Public School Fund.

Under Certificates held by the Company, on or about March 7, 1876, D. L. Cunningham surveyed said Block 44 for the T. & P. and returned his field notes to the General Land Office. Block 44 as surveyed consisted of forty-eight sections. From east to west it purported to be six miles and from north to south eight miles.

In making this survey Cunningham ran out and marked the exterior lines of the block, but did not run the interior lines dividing the block into sections. The interior section lines were an office survey made by Cunningham.

March 26, 1906, patents issued to the T. & P. for the odd numbered sections in accordance with the field notes filed by Cunningham in his construction of such block by sections. Block 44, as divided into sections by this survey, showed all of the sections were tied to each other, and there were no vacancies shown between any of them. In the field notes returned by Cunningham those relating to Section 22 read as follows:

"Said survey is situated in Ector Co. on the Divide between the waters of Colorado and Pecos River, about 16 miles N. 68° W. from Odessa, and known as Survey No. 22, Township 1 South, Block No. 44.

"Beginning at a stake and Earth md. 4 pits, the N.E. Corner of Survey No. 21,

"Thence S. 13° E. 1900 vrs. St. & Earth md. 4 pits,

"Thence N. 77° E. 1900 vrs. St. & Earth md. 4 pits,

"Thence N. 13° W. 1900 vrs. St. & Earth md. 4 pits,

"Thence S. 77° W. 1900 vrs. to the place of beginning."

On January 26, 1904, J. C. Beaty made application to purchase said Section 22 at $1.50 per acre, tendered one-fortieth of the purchase price in cash, together with proper obligations for the deferred payments. His application was accepted and the land awarded to him on January 26, 1904. Thereafter, on February 8, 1909, he made due proof of occupancy and sold and conveyed the Section to J. W. Buchanan, who, as part of the consideration, assumed payment of the balance due on the purchase money. Buchanan purchased a number of other sections in Block 44, among others, Section 27, which he owned on the date Section 22 was patented to Beaty for the benefit of Buchanan.

On September 20, 1912, Buchanan advised the Land Commissioner he desired to make payment and patent Section 22 and other sections in Block 44. The Commissioner advised him that there was an excess in the sections and a resurvey and corrected field notes would be required. Buchanan employed J. R. Wadsworth to make

this resurvey. In December, 1912, the corrected field notes as made by Wadsworth were filed with a map and same were passed by the Land Office as correct. Section 22 was recognized by the Commissioner as correct for 652¼ acres. Buchanan paid the required amount and patent was duly issued. The description in the patent was as follows:

"Six Hundred Fifty two and ¼ (652-¼) acres of land situated and described as follows: In Ector County, known as Sec. No. 22, Blk. 44, Tsp. 1S, T. & P. Ry. Co. Cert. No. 4352, about 13 miles N.W. from Odessa. Said land having been purchased and fully paid for in accordance with an act approved April 19, 1901. Beginning at the N. E. cor. of Sur. No. 21, iron pipe 3" in S. B. line of Sur. No. 16 this Block.

"Thence N. 74° 40' E. at 37 vs. pass iron pipe 3" same being S. W. cor. Sur. No. 15 and S. E. Cor. Sur. No. 16, this Blk. 1938 vs. iron pipe 3" for N. E. Cor. this sur. and N. W. cor. Sur. No. 23 this Blk.

"Thence S. 15° 20' E. 1900 vs. along W. B. line said Sur. 23 to iron pipe for S. E. Cor. this Sur. and N. E. Cor. Sur. No. 27 this Blk.

"Thence S. 74° 40' W. along N. Bdry. line said Sur. No. 27, 1901 vs. pass iron pipe 3" same being N. W. cor. of Sur. No. 27 and N. E. cor. Sur. No. 28, this Blk, 1938 vs. to iron pipe 3" for S. W. cor. this Sur. and S. E. cor. Sur. 21 this Blk.

"Thence N. 15° 20' W. 1900 vs. along E. Bdry line of said No. 21 to the beginning."

The map accompanying the field notes of Wadsworth showed all the sections comprising Block 44 as tied to each other and occupying the whole area within the exterior lines of the block. Corrected field notes were filed by Wadsworth as to Sections 2, 8, 18, 20, 22, 26, 28, 34, 38 and 46. The four corners of each section are described in the field notes as marked either by artificial monument, in the nature of an iron pipe, or by the adoption of an artificial monument, such as a mound of rock. Each of these monuments is described as likewise being the corner of an adjoining or related section. In the office survey of the sections made by Cunningham throughout the whole block the adjoining surveys bear this relationship to each other. Of course the interior corners of that survey are not marked by monuments.

The purpose of the Wadsworth survey was to determine the excess acreage contained in the ten sections above enumerated which Buchanan was seeking to patent and did pay for and patent. At the time the patent to Beaty to Section 22 was issued we have this situation: The map on file in the Land Office showed the southerly line of Section 22 to be the northerly line of Section 27, which was likewise owned by Buchanan; the field notes describing the Wadsworth survey described the south line of 22 as the north line of 27. It is fair, then, to assume that Wadsworth, in making the survey, intended that the south line of 22 should be the north line of 27; likewise, the Land Commissioner was under that impression and so was Buchanan. It was the intention of the Land Commissioner to convey the title of the State to Beaty for the benefit of Buchanan as same was established by the Cunningham survey, but requiring payment for the excess found therein. A more accurate statement, perhaps, would be to convey Section 22 as the law constructed same in view of the fact that in reality the exterior lines of the block contained more than forty-eight sections of 640 acres each. It will be observed in the Wadsworth field notes for Section 22 that from east to west it is 1938 varas and from north to south 1900 varas. Wadsworth took the excess out of the related odd numbered sections and put it in the related even numbered sections.

Surveyors Cunningham and Wadsworth died before this trial and hence the testimony of neither was available.

■ The construction of a description in a patent or deed is a legal question. Davis v. George, 104 Tex. 106, 134 S.W. 326.

It is not meant by the foregoing assertion to say that by construction alone of the field notes a boundary may be determined. Far from it, the actual location of a boundary may depend on a question of fact. Hughes v. Sandal, 25 Tex. 162; Thomson v. Langdon, 87 Tex. 254, 28 S.W. 931; Wilson v. Giraud, 111 Tex. 253, 231 S.W. 1074.

It will be observed that the east boundary line of 22 commences at the northwest corner of Section 23, marked by a three inch pipe, runs south 15° 20' E. 1900 varas along the west boundary line of Section 23 to iron pipe for southeast corner of 22 and northeast corner of 27. It

is asserted by the intervener and defendant that this pipe marking the southeast corner of 22 exists today where it was placed by Wadsworth for the southeast corner of 22; that the pipe as placed by Wadsworth is about 100 feet north of the northeast corner of section 27; that a line run, as called for in the notes, would not run along the north boundary line of 27, but the south boundary line of 22 would be 90 or more feet from the north boundary line of 27.

There is no serious disagreement between the expert witnesses of plaintiffs and those of intervener in respect to the exterior boundary lines of Block 44. Both of these witnesses substantially agree as to the monuments found by them called for by Cunningham as demarking the exterior lines of the block. The north line of the block is a well-established line, being the median line of what is known as the T. & P. reservation. The witnesses are likewise in substantial accord in saying that if 22 be established in accordance with the Cunningham field notes prorating the excess, that there would be no vacancy lying south of 22 and north of 27, and the north boundary of 27 would be the south boundary of 22. The divergence between Surveyor Williams, on behalf of the intervener, and Surveyor Dwyer, on behalf of the plaintiffs, is as to this iron pipe. Williams accepts same as an artificial monument intended by Wadsworth to mark the southeast corner of 22; Dwyer refuses to accept same as marking the southeast corner of 22.

A copy of Wadsworth's map as returned to the General Land Office may perhaps aid in clarifying this opinion, and same is here inserted:

Williams says that the pipe in question is a galvanized iron pipe 3⅓ inches in diameter. As stated before, Wadsworth's survey of the interior lines of this section was not an office survey. He did purport to mark the corners of the various sections, and did call for an iron pipe at the southeast corner of 22 described as likewise being the northeast corner of Section 27. Witness Williams established the exterior lines of the block and endeavored to trace the footsteps of Wadsworth in his survey of 22. He testified to the location of other iron pipes set, according to his theory, to mark other surveys in the block made by Wadsworth at or about the time 22 was surveyed. He bases his opinion on various other monuments he found which he says substantially correspond in character and location to those described in Wadsworth's field notes. Williams testified that at 7612.2 varas from the northwest corner of Section 2, the said block, he found a 3½ inch galvanized pipe which he took to be the pipe called for by Wadsworth in his field notes as the southeast corner of Section 22, in Block 44; that he found what he designated as the Wadsworth pipe at the southeast corner of Section 22 to be 91½ feet north of the patented north line of Survey No. 27 in said block. Williams testified in substance that beginning with Section 2, following the field notes of Wadsworth as filed for said section, he found a galvanized iron pipe at the northeast corner of Section 2 and the northwest corner of Section 1, which he took to be the pipe as called for in Wadsworth's field notes for Section 2; following the line run by Wadsworth and called for by him in his field notes, Williams testified that he found a 3 inch galvanized iron pipe 1903 varas south of the north boundary line of said block, and that it was within three varas of the distance called for by Wadsworth; he accepted and took the pipe to be that called for by Wadsworth as the southwest corner of Section 2. Further, at the southwest corner of Section 2 he found a galvanized iron pipe which was within a few varas of where Wadsworth said he placed an iron pipe, and he accepted the pipe to be the one called for as the southeast corner of Section 2.

Proceeding south from the north boundary line of the block along the line which would be the projection of the west boundary line of Section 2, that at 7612.2 varas from the northwest corner of Section 2 he found a three and a half inch galvanized pipe which, in view of the field notes returned by Wadsworth for Section 22, he accepted and took as Wadsworth's mark and the pipe called for by him as the southeast corner of Section 22. He said the pipe was 12.2 varas further south than Wadsworth called for it to be. Nevertheless he took it to be Wadsworth's corner for the reason that in surveying Section 2 it had been ascertained that Wadsworth's corner was three varas further south than called for; that apparently Wadsworth gained three varas in each mile. Witness stated that at the time Wadsworth was doing his work in Block 44 in 1912 all surveyors were using link chains, and that would account for Wadsworth's miles being three varas longer than the mile called for.

Proceeding south along the same line, witness said at 11,414 varas south of the northwest corner of Section 2 he found a three and a half inch galvanized iron pipe which he took to be the pipe called for by Wadsworth as the southeast corner of Section 34 in said block.

At 13,316 varas south from the north boundary line of said block and south of the northwest corner of Section 2 of said block, Williams testified that he found a three inch galvanized iron pipe which he took and accepted as the northeast corner of 46, according to Wadsworth's field notes for said section.

Williams testified that in connection with the survey which he made of Wadsworth's corrected field notes for said Section 26 he found a three inch galvanized iron pipe at a point which he took to be the northeast corner of Section 26 and the southwest corner of 24 in said block; that he accepted and took this to be the pipe called for by Wadsworth. Proceeding west from this point the distance called for in Wadsworth's field notes he found a pipe which he accepted as the northwest corner of Section 26 and also the southeast corner of Section 22. Proceeding south from said pipe 1900.3 varas a fence running east and west was found, and proceeding east along said fence 1900.6 varas from a straight line drawn south from the northwest corner of Section 2 he found a three inch galvanized iron pipe under said fence which he took and accepted to be the pipe called for by Wadsworth as the southeast corner of Section 26; the pipe was located 9,516 varas south from the north boundary line of said block. Wadsworth's call for said

pipe was 9,500 varas from said north line. Further, a straight line drawn between the pipe which he took to be the northeast corner of Section 26 and the northwest corner of Section 26 is parallel to the north boundary line of said Block 44 and at 38.8 varas north of the north line of survey 27, as such survey 27 was patented.

In surveying Section 38, Williams testified that at the northwest corner of Section 38 he found a three inch galvanized iron pipe 11,415.5 varas south of the north boundary line of Block 44 which he took to be the pipe called for by Wadsworth in the corrected field notes which he returned for Section 38 in said block. Wadsworth, he said, in fact called for this pipe to be an even six miles from the north boundary, but that it was actually six miles and fifteen varas. Further, a line projected west from this pipe and parallel with the north line of Block 44 would miss by only 1.5 varas the pipe which he found in the southeast corner of Section 34 and took to be the pipe called for by Wadsworth as the southeast corner of Section 34; that at 13,316 varas south from the north boundary line of said block he found a galvanized iron pipe which he took to be the southeast corner of Section 38, as called for by Wadsworth.

Williams testified that from the iron pipe he took to be the one placed by Wadsworth at the southeast corner of Section 22 and the one called for by Wadsworth in his field notes he could trace the footsteps of Wadsworth in his survey of 22, and that the iron pipe which he took to be the one called for by Wadsworth in his field notes for the southeast corner of Survey 22 was 91½ feet or 35.8 varas north of the Cunningham north line of Section 27.

A witness, Charlie Judkins, a chain carrier for Wadsworth in 1912, testified that in November, 1912, Wadsworth did some surveying in Block 44 for Buchanan; that Wadsworth began his work in surveying the various sections in Block 44 on the north side of Buchanan's pasture; according to his recollection the corners of the various sections surveyed were marked by iron pipe which varied in size from three, three and a half to four inches.

William Alley, County Surveyor of Ector County, testified on behalf of the defendant that he ran a line from the north boundary line to the south boundary line of Block 44, beginning such line of survey at the northwest corner of Section 2; that in surveying the line he had before him the corrected field notes prepared by Wadsworth; in surveying this line he found a three inch pipe at 1903 varas south of the north boundary line of said block, which was only three varas further south from the north boundary line than Wadsworth called for in his field notes for Section 2 in said block; at 3805.8 varas south from the north boundary line of said block Allen found a three inch galvanized iron pipe in the approximate location called for by Wadsworth in his corrected field notes for Section 14; further, that at 7615.2 varas south of the north boundary line of said block he found a three and a half inch galvanized iron pipe which was in the approximate location of the southeast corner of Section 22 as called for by Wadsworth in his corrected field notes; at 9516.8 varas south of said boundary line of said block he found a fence running east and west at or near the south line of Section 26; 11,419.6 south of the north boundary line of said block he found a three inch galvanized iron pipe in the approximate location called for by Wadsworth in his corrected field notes for Section 34; at 13,322.2 varas south of said boundary line he found a three inch galvanized iron pipe in the approximate location called for by Wadsworth.

■ The testimony of the expert witness for plaintiffs, Dwyer, is not set out for the reason that in passing upon the propriety of the trial court's instruction of a verdict the testimony of the losing party must be accorded its full weight. In regard to the testimony of the witness Dwyer, however, suffice it to say, his opinion did not agree with that of Williams as to the pipe in question being the southeast corner of Section 22. He supported his deduction that the pipe in question was not such by measurements on the ground, as to monuments found on the ground.

The testimony of either Williams or Dwyer could, for the most part, have been accepted as representing facts. There were reasonable deductions supporting the conclusions reached by either witness as to the matters they did not agree upon in their testimony.

In short, we think an issue of fact was raised by this testimony.

As has been stated, the problem here is the correct construction of the description contained in the patent of Section 22 to plaintiffs' predecessor in title, Beaty. If the iron pipe referred to in the patent was

the true northeast corner of 27, there would be no ambiguity here. The westerly call from that point would run along the north boundary line of Section 27 and there would be no vacancy. But, concededly, this iron pipe as located by Williams is not the northeast corner of Section 27. The call is from an iron pipe set for the southeast corner of 22 along the north boundary line of 27. Thus the ambiguity in applying the description to the ground. There is, concededly, if we accept the iron pipe as the southeast corner, inconsistency between the calls in the description.

A locative call controls over a descriptive call. We think the call for the pipe is a locative call. Stafford v. King, 30 Tex. 257, 94 Am.Dec. 304; Oliver v. Mahoney, 61 Tex. 610; Polk v. Reinhard, Tex.Civ.App., 193 S.W. 687; Hays v. Clawson, Tex.Civ.App., 286 S.W. 857; Kyle v. Clinkscales, Tex.Civ.App., 22 S.W. 2d 729; Atlantic Oil Producing Co. v. Hughey, Tex.Civ.App., 107 S.W.2d 631.

A map is a picture of a survey; field notes a description thereof. The survey is the substance, and consists of the actual acts of the surveyor. If existing established monuments are on the ground evidencing these acts, such monuments control. Such established monuments control because same are the best evidence of what the surveyor actually did in making the survey. More, they are part at least of what the surveyor did. 9 Corpus Juris, 210.

In the case of Blackwell v. Coleman County, 94 Tex. 216, 59 S.W. 530, it is said: "In determining the location of land in such cases the courts seek to ascertain the true intention of the parties concerned in the survey. But the intention referred to is not that which exists only in the minds of the surveyor. It is defined as that which may 'be gathered from the language of the grant' or as 'the intention apparent on the face of the grant' (Hubert v. Bartlett's Heirs, 9 Tex. [97] 104), or 'the legal meaning of the language of the patent when considered in the light shed upon it by the acts constituting the survey' (Robertson v. Mosson, 26 Tex. [248], 251; Robinson v. Doss, 53 Tex. [496] 507; Brown v. Bedinger, 72 Tex. 247, 10 S.W. 90; Richardson v. Powell, 83 Tex. [588], 591, 19 S.W. 262). When reference is made in the decisions to the intention of the surveyor, the purpose deduced from what

he did in making the survey and description of the land is meant, and not one which has not found expression in his acts. Grants are issued by the state and accepted by the grantees upon the acts done by the surveyor in identifying and describing the lands, and the rights of both are to be determined by the legal effect of those acts, and not by intentions which cannot be deduced from a construction of the descriptions in the grants with the aid of the facts constituting the surveys upon which they are based." In short, it is the expressed intention of the grant that is the material inquiry.

Insofar as the field notes govern an area conveyed, that inquiry is not what the surveyor intended to do, but, if it can be determined, what he actually did. Blackwell v. Coleman County, supra; Blake v. Pure Oil Co., 128 Tex. 536, 100 S.W.2d 1009.

Eliminating the call for this iron pipe as the southeast corner of Section 22, there can be, under the evidence introduced, but little question that the call would extend to the north line of Section 27. This would be true even though the distance call was insufficient to reach the north line of 27. This construction would fit in with the configuration of the related surveys. The problem, however, is at all times the same—to follow the footsteps of the surveyor. In solving this problem the best evidence available must be given the weight accorded by the most reliable rules for the construction of a grant. Maddox Bros. & Anderson v. Fenner, 79 Tex. 279, 15 S.W. 237.

In the brief of defendant and intervener the following proposition is asserted: "Where one accepts a patent based on corrected field notes, he and those claiming under him cannot thereafter maintain any claim to the land included in the original survey but which was excluded from the corrected survey and the patent." As sustaining this proposition a long list of cases are cited, among which are Holmes v. Yates, 122 Tex. 428, 61 S.W.2d 771; Miller v. Yates, 122 Tex. 435, 61 S.W.2d 767; Finberg v. Gilbert, 104 Tex. 539, 141 S.W. 82; Caples v. Cole, 129 Tex. 370, 102 S.W.2d 173, 104 S.W.2d 3; Weatherly v. Jackson, 123 Tex. 213, 71 S.W.2d 259; Humble Oil & Refining Co. v. State, Tex. Civ.App., 104 S.W.2d 174; Montgomery

County v. Angier, 32 Tex.Civ.App. 451, 74 S.W. 957. In our opinion the cases cited establish the proposition. Plaintiffs take the position that the proposition is only established by these authorities to the extent that the grantee knew and acquiesced in the exclusion from his purchase of part of the area he sought under his original application. It is true, the situation is somewhat different in this case than in the above cited cases. In most at least the rejection of the surveyor was at the time of the initiation of the attempted purchase. The Land Commissioner rejected the field notes, on stated grounds, and new application was made eliminating the objections stated by the Commissioner. There was, it is true, a conscious relinquishment of the claim. Here, a corrected survey was demanded as a condition precedent to the end that the excess acreage might be determined. There the transactions were executory in their nature. Here executed for the patent was the final consummation of the right of the applicant to the land purchased. The State tendered the patent as final performance. The purchaser accepted it as such.

■ The filing of the corrected field notes was tantamount to an application to purchase the excess acreage in Survey 22. The original description was amended for this purpose. It was, however, amended by the voluntary act of the patentee. The corrected field notes not only purported to determine the area, but purported to describe and mark its application to the ground. In our opinion, the patent as issued, merges and determines all prior rights held and claimed by the patentee. Anderson v. Robison, 111 Tex. 402, 229 S.W. 459, 238 S.W. 883; Buie v. Miller et al., Tex.Civ.App., 216 S.W. 630.

"The inquiry * * * is directed to the survey as made, and not as it should have been made." Forbis v. Withers, 71 Tex. 302, 9 S.W. 154.

In order to determine the excess acreage contained in Section 22, the establishment of the exterior lines of the block was essential. These lines determined the correct area of 22, could have been determined by calculation. The survey by Wadsworth not only undertook to establish the exterior block lines, but to establish and mark the boundary lines of 22.

■ Plaintiffs contend that we should disregard the specific description contained in the patent and rely on the general description as the most reliable guide. It is true the area involved came into being as a tract of Public School Land by virtue of the Cunningham Survey. From and after the filing and acceptance of the Cunningham Survey it was thereafter and now is known as Section 22. But the resurvey as made was for the definite purpose of establishing Section 22 on the ground. Plaintiffs are charged with notice of his survey. It was tendered as a measure of plaintiffs' right. The Land Commissioner accepted it as such.

What Judge Hickman said in Stanolind Oil & Gas Co. v. State, 129 Tex. 547, 101 S.W.2d 801, 808, applies here: "This is not a suit to reform. The land granted by this patent is that included by the boundaries fixed according to the field notes, and not merely the acreage called for, and our sole inquiry is directed to the survey as made by the surveyor. Blackwell v. Coleman County, 94 Tex. 216, 59 S.W. 530; Forbis v. Withers, 71 Tex. 302, 9 S.W. 154; Weatherly v. Jackson, 123 Tex. 213, 71 S.W.2d 259; Blake v. Pure Oil Co. [128 Tex. 536], 100 S.W.2d 1009."

■ We think that a general description is always controlled by an actual survey which has been marked on the ground. This opinion is further confirmed by the fact that the purpose of the survey was to mark out the very limits of the land to be conveyed, and the patent is made with reference thereto.

■ As has been stated before, the real problem is to determine the footsteps of the surveyor. If this can be determined all other description yields thereto.

■ What we have heretofore said disposes in substance, according to our view, of the issue of estoppel. If the patent does not include the land at the date of defendant's application, title thereto was vested in the State. At all times the patentee is charged with notice as to the area actually described in the patent. Plaintiffs' predecessors accepted this patent in full and final consummation of their rights under their file. It is the exact admensuration of their rights under the law. If a mistake was made it cannot be corrected in this proceeding.

To hold that the State is estopped to claim this land would be tantamount to

extending the boundaries described in the patent by construction.

■ In our opinion the true location of the south boundary line of Section 22 as established and marked on the ground by surveyor Wadsworth was raised by the pleading and the evidence and should have been submitted to the jury.

■ There is a question as to the admissibility of evidence that should be discussed. The court sustained the objection of plaintiffs to a certain map or plat made by plaintiffs' witnesses Dwyer and Zant while in the employ of plaintiff Gulf Oil Company. The map was made during the years 1930–1935. It came from the custody of said plaintiff. If this map or plat was consistent with defendant and intervener's theory and inconsistent with that of plaintiffs', we think same was admissible as an admission. A proper predicate is not shown in the statement to make it admissible as to the credibility of either Zant or Dwyer. Nowhere is it shown in the statement that such map was called to the attention of either Zant or Dwyer. It was, however, a record made and kept by plaintiffs, and as such we think same was admissible. Its weight was another question.

■ Complaint is also made as to the trial court admitting in evidence the Land Office map of Ector County dated June, 1901; also the map of 1890 of Ector County, and the T. & P. Railway map of 1876. The objection was that such maps were not relevant to prove boundary. We think the maps were admissible. 7 Tex.Jur. 229. These maps may not in and of themselves establish boundary. However, in connection with other testimony same are, in our opinion, relevant. Further, the execution and authenticity of the T. & P. map should be shown.

Reversed and remanded.

### On Rehearing.

In the first paragraph of the motion for rehearing defendants in error suggest that there is no jurisdiction to pass upon this appeal. This contention has not been heretofore urged and is based upon an Act of the Forty-Sixth Legislature, known as Senate Bill No. 69, Vernon's Ann.Civ.St. art. 1883a. It is deemed unnecessary to encumber this opinion by copying the pro-visions of that Act. Suffice it to say that by its terms it went into effect on the 1st day of January, 1940. Section 1 thereof provides: "No party who participates either in person or by his attorney in the actual trial of the case in the trial court shall be entitled to review by the Court of Civil Appeals through means of writ of error."

All parties to this appeal participated in the actual trial of the case in the District Court. Final judgment was rendered herein July 14, 1938. A notice of appeal was given, but same was not perfected. On January 4, 1939 petition for writ of error was filed and thereafter the record was perfected and filed in this Court March 17, 1939.

Article 5, Section 6, of the Constitution, Vernon's Ann.St. provides: "Said Courts of Civil Appeals shall have appellate jurisdiction co-extensive with the limits of their respective districts, which shall extend to all civil cases of which the District Courts or County Courts have original or appellate jurisdiction, under such restrictions and regulations as may be prescribed by law."

Section 13, Article 1, of the Constitution provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishment inflicted. All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law."

■ It appears from the Constitution that the right of appeal from a final judgment is a constitutional right. See Eppstein & Co. v. Holmes & Crain et al., 64 Tex., 560; Pendley v. Berry et al., 95 Tex. 72, 65 S.W. 32; Pratley v. Sherwin-Williams Co. of Texas, Tex.Com.App., 36 S.W.2d 195. This right of appeal cannot be denied by the Legislature, but may be regulated by laws prescribing the manner in which such appeals shall be prosecuted. Edwards v. Morton, 92 Tex. 152, 46 S.W. 792, 793.

Defendants in error seek to sustain their position as to lack of jurisdiction by the cases of Nordyke v. Wright, Tex.Civ.App., 298 S.W. 910, and Plummer et al. v. Van Arsdell, 117 Tex. 200, 299 S.W. 869.

To our mind there is a distinction between those cases and the case at bar. In

those cases the right of appeal was conferred by Article 2249, R.S.1925, providing that one could appeal from an order granting a new trial. In 1927 that article was amended, Vernon's Ann.Civ.St. art. 2249 and the provision giving the right of appeal from an order granting a motion for a new trial was repealed. The jurisdiction to pass upon a judgment granting a new trial was conferred by the Legislature and was taken away by the Legislature. In the cases last above referred to the right of appeal from a final judgment was not denied. It might have been presumed that, even though the judgment granting the new trial was improper, the same judgment would be entered on another trial. Expense, vexation and delay might be occasioned, but a right guaranteed by the Constitution would not be denied. No real, substantial ultimate right was denied by the repeal of that law.

■ Steps having been taken sufficient to perfect the constitutional right of appeal prior to January 1, 1940, it is our opinion that that Act does not operate to divest the jurisdiction vested prior thereto. Globe Indemnity Co. v. Barnes, Tex.Civ.App., 280 S.W. 275; Walker et al. v. Lyles et al., Tex. Civ.App., 45 S.W.2d 315; Id., 124 Tex. 38, 72 S.W.2d 1113.

The motion to dismiss for lack of jurisdiction is overruled.

The equities of the defendants in error as urged with great force and clarity in their motion for rehearing and on the original hearing appeal to us with great force. However, we are bound to follow the law as we believe it exists. When a patent is issued based on a survey, the actual footsteps of the surveyor are binding and must be followed. This is true despite the fact that it was the policy of the State at the time, to dispose of this land according to a plat and plan, the plan and plat being in accordance with the use for which the land was then conceived to be reasonably susceptible and to be in accordance with the best interest of the State and purchaser.

The estoppel urged against the State is the patent in question. This patent conveys the land in accordance with the Wadsworth survey. In order to establish this survey questions of fact must be determined, for such facts are not established by clear and uncontroverted evidence.

The motion for rehearing is overruled.