W. D. NOEL et al., Appellants,

v.

The ATLANTIC REFINING COMPANY, Appellee.

No. 5805.

Court of Civil Appeals of Texas.

El Paso.

April 19, 1967.

Rehearing Denied May 10, 1967.

Crawford C. Martin, Atty. Gen., C. L. Snow, Milton Richardson, Hawthorne Phillips, Arthur Sandlin, Asst. Attys. Gen., Austin, Shepperd & Rodman, Odessa, Pat H. Candler, Dallas, for appellants.

Stubbeman, McRae, Sealy & Laughlin, Durward Goolsby, W. B. Browder, Jr., Midland, for appellee.

## OPINION

PRESLAR, Justice.

This is a suit in the nature of trespass to try title to land involved in a vacancy award. The trial court sitting without a jury granted judgment for the plaintiff for title to the minerals under the land, found that it was not a vacancy, and canceled the patents.

The Atlantic Refining Company, appellee herein, sued all of the defendants, W. D. Noel, J. S. Lane, Harry Howard and wife, and Bankers Life Company for title and possession of two tracts of land, the first tract containing 60.53 acres and being described as part of Section 10, Block 1, and the second containing 94.5 acres described as being out of Section 26, Block 1, M. K. & T. R. R. Co. Survey in Upton County, Texas; and Atlantic also asked judgment declaring that said two tracts of land were not vacant, unsurveyed school lands and it alleged that the application of the defendant Noel to lease said tracts should have been denied, and the Good Faith

Claimant applications to purchase of the defendants Lane and Howard should have been denied, and the patents awarded under such applications canceled. Bankers Life Company was a party to the suit as the holder of a deed of trust mortgage on the Howard property. The State of Texas intervened and filed an answer and trespass to try title cross-action.

■■■ Blocks 1 and 2, M. K. & T. R. R. Co. Survey were originally surveyed in 1881 by H. C. Barton. Block 1 was resurveyed in 1913 by R. S. Dod. The controversy over the land in question is the result of conflicts in the two surveys, in that Dod placed the north lines of Sections 10 and 26 south of Barton's locations for such lines. Thus the two tracts in question come out of Sections 10 and 26, as originally surveyed by Barton. Sections 1 and 15 of Block 2 were patented on Barton's field notes and they are immediately north of sections 10 and 26 respectively. Sections 10 and 26 were patented on Dod's survey, and with the four sections in place by the field notes on which each was patented, the two tracts involved exist between them. W. D. Noel filed an application to lease the minerals on the two tracts, alleging them to be vacant, unsurveyed land belonging to the Public Free School Fund, as provided by Article 5421c, Vernon's Ann.Civ.St. The Commissioner of the General Land Office approved Noel's application after a survey and public hearing. Patents were also later issued to Lane and Howard on the two tracts following their application to purchase as Good Faith Claimants. Atlantic then instituted this suit in which it claims the two tracts are not vacant, un-surveyed land, and that it owns the minerals thereunder by reason of having purchased all of the minerals under Sections 10 and 26 after Dod's resurvey, but before patents issued based on such survey. Appellee, as plaintiff in the trespass to try title suit, undertook to prove that title to the land in question had passed out of the State and is now vested in plaintiff. The chain of title is unbroken, but we are of the opinion

that title remained in the State because of the circumstances of the issuance of patents to Sections 10 and 26 based on the resurvey. The principle of law involved is that one who accepts a patent to land con-taining field notes which do not embrace all of the original survey is estopped to claim any right by virtue of the original survey; or stated otherwise, the assignee of a land certificate loses all title or claim to so much land as may be included in an original file and survey thereunder as is without the limits of a corrected survey on which such assignee accepts a patent. The rule is fully set forth by the Supreme Court in three cases decided on the same date (May 13, 1933)—Miller v. Yates, 122 Tex. 435, 61 S.W.2d 767; Holmes v. Yates, 122 Tex. 428, 61 S.W.2d 771; Turner v. Smith, 122 Tex. 338, 61 S.W.2d 792. Also see Wofford v. Miller, Tex.Civ.App., 381 S.W.2d 640, err. ref., n. r. e., and cases there cited.

The chain of title relied on by plaintiff included applications to purchase Section 10 by one H. R. Smith, filed in 1905, and Section 26 by one Jno. R. Johnson, filed in 1904. The certificates which issued on these applications, by a chain of assignments, came to be owned by Union Land Company, along with certificates to other sections in Block 1. All were based on the survey of Barton. In 1913 Union Land Company determined to have Block 1 resurveyed and entered into a written contract with Dod to make such survey. That contract provided that Dod was to render to the General Land Office of the State of Texas for its file a complete set of field notes and maps of his survey, and that in no case were corners to be left out and notes so incomplete as to cause the General Land Office to reject the maps and notes after the surveys had been made. It was also provided that a portion of Dod's pay was to be withheld until his notes were accepted by the General Land Office. In negotiating its contract with Dod, Union Land Company was informed by Dod that it would be necessary for it to apply to the Commissioner of the General Land Office, designating the land to be

surveyed, and have him commissioned by the General Land Office if Union desired the work to go on record in the General Land Office. Those things were done by Union Land Company, Dod may the resurvey, and his field notes and maps were accepted by the General Land Office and placed in its files. Union Land Company was informed by the General Land Office that the field notes of the resurvey by Dod "together with elaborate report and plats, have been examined and approved by this office and the papers filed in their proper wrappers. The correct area in each survey will be made accordingly on the State Abstract for lands in Upton County." Union Land Company by reply letter acknowledged receipt of this General Land Office letter. The contract and correspondence above referred to have been a part of the General Land Office files regarding this land through the years.

Cordova-Union Oil Corporation purchased the interests of Union Land Company and in 1943 conveyed to plaintiff, Atlantic Refining Company, all of the minerals in lands owned by it in Texas. In 1944 Cordova-Union conveyed Section 10 to Lane, and Section 26 to Howard, by deed reciting that all of the minerals had previously been conveyed to Atlantic. Also in 1944, Cordova-Union paid to the State the balance owing on the purchase price of such sections. In 1945 Great Southern Life Insurance Co., a mortgagee of both Lane and Howard, processed applications for patents to Sections 10 and 26. Patent to Section 10 was issued to E. G. King, assignee, with a recitation that it was bought and paid for on the application of H. R. Smith filed in 1905. Section 26 was patented to Jno. R. Johnson based on his application of 1904. Both patents described the land conveyed by the field notes of Dod's 1913 survey. This was the first use of a metes and bounds description in the chain of title.

We have traced the actions of Union Land Company somewhat in detail in their obtaining a resurvey, because it demon-

strates clearly that they requested it with every intention that it be recognized by the General Land Office, that it was so recognized, and that Union Land accepted such fact. It also shows the condition of the file through the years when the assignees under Union Land purchased.

▆ Atlantic maintains that it has never accepted the resurvey, and that it claims under the original survey of Barton, which can still be located on the ground. As we view the applicable law, this position is not valid, because Atlantic claims under Union Land Company, who requested and accepted the resurvey, and it claims under E. G. King, assignee of applicant H. R. Smith, and Jno. R. Johnson, to whom the patents were issued. As said in Turner v. Smith, supra, 61 S.W.2d at page 803:

> "* * * suffice it to say that the case of Miller v. Yates, this day decided, recommits this court to the rule that, after a patent has been accepted to certain land, the application is merged in the patent and the patentee, and those claiming under him are estopped to claim any land lying outside the bounds of that patent by virtue of the fact that the first or original application included other lands."

▆ Regardless of Atlantic's intention not to accept the resurvey, acceptance was accomplished for it by its predecessors in title. It must and does rely on its record title, and by its record title the land in controversy never passed to Atlantic because it was outside the bounds of the resurvey. Quoting again from Miller v. Yates:

> "As said by Mr. Justice Pleasants, speaking for the Galveston Court of Civil Appeals, in a case wherein writ of error was refused, styled Montgomery County v. Angier, 32 Tex.Civ.App. 451, 74 S.W. 957, 959: 'Plaintiff testified that he did not intend to abandon his claim to the land in controversy by filing corrected field notes of the John Heyser survey and obtaining a patent thereon which did not

include the land in controversy, but this is immaterial. The effect of the filing of the corrected field notes and the issuance of a patent thereon at the request of plaintiff was to cancel the original field notes, and thus annul the only title under which plaintiff claimed the land in controversy, and this result was accomplished regardless of plaintiff's intention.' "

The application of Union Land Company for a resurvey, the appointment of Dod to make such survey, his field notes, maps, and report, the General Land Office approval thereof, and Union Land Company's acceptance, were all a part of the General Land Office file pertaining to this land when Atlantic purchased in 1943, and had been for some thirty years. Again quoting from Miller v. Yates:

"The law charged Miller with knowledge of all material facts which he must have known had he elected to avail himself of his statutory right to ascertain the correctness of the land office sketches and map. Having elected not to avail himself of his statutory right, but having in effect represented to the land office by presentation of the corrected field notes that he no longer asserted claim or title to anything without the bounds of the corrected survey, his rights thereafter were precisely the same as though the file and surveys had stood from the beginning as corrected."

Thus, it would seem that Union Land Company could claim title only to such land as was described in the corrected survey, and that was all it could pass to its assignee. That assignee, Cordova-Union, charged with knowledge of the condition of the file, later fully paid the balance owing to the State. It was this payment which permitted the patents to issue. When the patents did issue, this case became very similar to Miller v. Yates.

Atlantic urges that it is entitled to rely on Barton's survey because portions of it which Dod was unable to locate on the ground can, in fact, be located. It presented evidence to that effect and urges the rule that a junior survey cannot tear apart a senior survey which can be located. It also urges that Barton's survey of Blocks 1 and 2 are a block or system of surveys which cannot be torn apart. We are of the opinion that those principles, and the case cited in support thereof, are not applicable to the situation before us. When Dod's field notes, plat and report were filed and accepted by the General Land Office, they became the official survey of these sections, and when patents issued thereon the question of the land conveyed became final. Once a patent is issued, the survey and file merge into the patent and the grant is final. Forbes v. Withers, 71 Tex. 302, 9 S.W. 154; Anderson v. Robison, 111 Tex. 402, 229 S.W. 459, 238 S.W. 883 (S.Ct.1922); and see authorities cited by this court in Miller v. Yates, Tex.Civ.App., 15 S.W.2d 730, affirmed in Miller v. Yates, supra, in which the Supreme Court quoted from Forbes v. Withers the following:

" 'The action of the surveyor is presumed to be proper, and the presumption cannot be disputed after the surveys have matured into patents. Hence the inquiry as to what lands are granted by the patent is directed to the survey as made, and not as it should have been made by the surveyor. The file then becomes immaterial, save as it may throw light upon the actual survey. Booth v. Upshur, 26 Tex. [64] 68.' "

We conclude that the effect of the resurvey and its acceptance and the issuance of the patent based thereon was to exclude the land in question from any claim of Atlantic. As plaintiff, it failed to prove its title, and the district court erred in awarding title to the land in controversy to Atlantic.

The judgment of the district court is accordingly reversed and judgment here rendered that appellee, as plaintiff, take nothing.